[No. 14394–8–I.   Division One.   April 24, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD
E. MUSIC, *Appellant*.

*Ronald E. Music,* pro se.

*Seth Dawson, Prosecuting Attorney,* and *S. Aaron Fine, Deputy,* for respondent.

COLEMAN, J.—On August 23, 1979, an information was filed charging Ronald Music with second degree assault. On July 2, 1980, this information was amended to add allegations that Music was armed with a deadly weapon and a firearm. On September 4, 1980, Music pleaded guilty to a second amended information charging him with attempted second degree assault and deleting the deadly weapon and firearm allegations. The pertinent portions of the statement on plea of guilty read as follows:

10. I have been told the Prosecuting Attorney will take the following action and make the following recommendation to the court: The prosecutor will recommend a suspended sentence if the presentence investigation shows a burglary and an obstruction charge, since the burglary, and no other priors since the burglary excluding traffic.

11. I have been told and fully understand that the court does not have to follow the Prosecuting Attorney's recommendation as to sentence. The court is completely free to give me any sentence it sees fit no matter what the Prosecuting Attorney recommends.

12. The court has told me that if I am sentenced to prison the Judge must sentence me to the maximum term required by the law, which in this case is five (5) years. The minimum term of sentence is set by the Board of Prison Terms and Paroles. The Judge and Prosecuting Attorney may recommend a minimum sentence to the Board but the Board does not have to follow their recommendation.

13. The court has asked me to state briefly in my own words what I did that resulted in my being charged with the crime(s) in the information. This is my

statement: On July 12, 1979, I attempted to assault Mark Reimers with an instrument likely to produce harm. This happened in Snohomish County[.]

According to the record, the statement in paragraph 13 above was composed by defense counsel.

At the time of Music's in–court plea, his counsel stated:

MR. LYON: Your Honor, I'd indicate for the record that I've had an opportunity to review with Mr. Music his various legal and constitutional rights that he waives by entering a plea of guilty this afternoon, . . . He has indicated to my satisfaction he understands all of those rights and realizes that he is waiving them by entering a plea of guilty this afternoon.

In addition, pursuant to the plea negotiation, the Prosecutor has indicated that he will recommend a suspended sentence and a probationary term. I have advised Mr. Music and he understands that although the State will be making a recommendation at sentence and I will be making a recommendation at sentence, that the Court is not bound to anyone's recommendation but may go beyond the recommendation of the State or Defense Counsel in imposing a sentence which the Court deems appropriate and just under the circumstances.

THE COURT: Has he been advised of the maximum penalty?

MR. LYON: He's also been advised that the maximum penalty for attempted second degree assault is five years in the State institution and/or a five thousand dollar fine. Understanding all of those rights and realizing he's waiving them by entering a plea this afternoon, he has indicated to me a desire to plead guilty to the charge.

We have filled out in paragraph 13 a brief statement of what occurred on the evening of July 12th, 1979. I wrote it out in my handwriting after having discussed the matter with Mr. Music and at his direction. I'd ask Mr. Music to sign the Statement of Defendant on Plea of Guilty at this time in open court.

On January 29, 1981, Music came before the court for sentencing. At that time, the prosecutor (Mr. Gissberg) and defense counsel (Mr. Lyon) made the following recommendations:

THE COURT: What is your recommendation, Mr. Gissberg?

MR. GISSBERG: I have already made my recommendation, which is a suspended sentence. And I quite frankly feel that if the Court is inclined to grant probation, it would be—it should be done with at least—well, a year in the county jail. And I think the Court should take a look at all of the circumstances in evaluating what has been said here.

MR. LYON: Your Honor, I would concur with the recommendation of the State in terms of the recommended sentence being a suspended sentence. I would ask or suggest to the Court that perhaps a four–year suspended sentence—a considerable amount of jail time be imposed on Mr. Music. I would ask that Mr. Music be allowed to work in the work release facility or serve that time in the work release facility if he is determined eligible.

The court then granted a deferred sentence, conditioned on 9 months in the county jail.

On August 11, 1982, Music violated the conditions of his probation by committing a burglary. Consequently, the court revoked probation and ordered execution of the sentence of imprisonment with credit for the time served in the county jail. Fourteen months later, Music moved to withdraw his guilty plea and to vacate the judgment and sentence. His motion was denied and Music appeals from this ruling.

We first address Music's contention that the plea agreement was breached by the prosecution. A guilty plea may be withdrawn or specific performance granted where the plea agreement was not kept by the prosecution. *State v. Taylor*, 83 Wn.2d 594, 597, 521 P.2d 699 (1974). Due process requires that the prosecutor adhere to the terms of a plea bargain agreement, and the focus is not on the fairness of the sentencing judge, but on the conduct of the prosecutor. *In re Palodichuk*, 22 Wn. App. 107, 109–10, 589 P.2d 269 (1978). In this regard, Music contends the prosecution breached the plea agreement by recommending jail time in addition to the agreed recommendation of a suspended sentence. The State replies by pointing out that nowhere in

the plea agreement, or anywhere else in the record, did the prosecutor agree to limit his discretion in recommending the imposition of *conditions* in connection with the suspended sentence. Since a suspended sentence may include a term in the county jail,[1] the prosecutor argues that the agreement was not breached.

Music's argument relies primarily on *In re Palodichuk, supra.* The prosecutor in *Palodichuk* agreed to recommend a suspended sentence with a 4–year probation. *Palodichuk,* at 108. However, the prosecutor submitted the following sentencing report:

> At the time Mr. Palodichuk pled guilty and I indicated to his attorney what my recommendation would be, I was not aware that he had been on a probationary program in Clark County.
>
> At the time he pled guilty, and without the information of a prior probation, I indicated that I would recommend that Mr. Palodichuk be granted a four year suspended sentence . . . [and] probation . . .
> . . . *Candidly, the additional information from Mr. Williams* [the probation officer in Clark County] *has caused second thoughts about that recommendation.*
> . . .
> Mr. Palodichuk, clearly, will be a probation risk. If he is granted probation, it is my hope that the probation will be a strictly supervised probation and that it will be directed toward rehabilitation of Mr. Palodichuk, and hopefully in the direction of his expressed goals.

*Palodichuk,* at 108–09. Moreover, at the sentencing hearing, the prosecutor made the following statement in reference to his report:

> [PROSECUTOR:] Your Honor, I don't have really very much to add to my presentence report. I find Mr. Palodichuk's pattern, as far as I can trace back, a crazy–quilt pattern, no consistency . . . I think that the only way probation could work for Mr. Palodichuk is a type of structured probation . . . with a number of

---

[1]RCW 9.95.210 and RCW 9.92.060 give trial courts discretionary authority to condition a suspended sentence on up to 1 year in the county jail.

conditions he has to live up to in order to remain on probation. That is all.

*Palodichuk,* at 109. In holding that the prosecutor had breached the plea agreement, the *Palodichuk* court stated:

> In the present case, the prosecutor did not expressly violate the terms of the agreement since he recommended probation as promised. However, by his reservation he tainted the sentencing process so that a breach in fact did occur. This less than wholehearted support for the terms of the plea bargain agreement was held to constitute a breach in *United States v. Brown,* 500 F.2d 375 (4th Cir. 1974). In *Brown* the court reasoned that *Santobello* [*v. New York,* 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971)] requires that any breach of the agreement, whether or not it actually influenced the sentencing judge, entitled the accused to relief. Such a breach occurs when "[t]he government effectively undercut[s] the agreement" in statements by the district attorney that he has reservations about the agreement:

*Palodichuk,* at 110.

█ Unlike the prosecutor in *Palodichuk,* the prosecutor in the case *sub judice* did not communicate to the trial court any reservations concerning his recommended sentence, nor did his statements imply "less than wholehearted support for the terms of the plea bargain agreement". As agreed, the prosecutor recommended a suspended sentence. However, imposition of a suspended sentence does not preclude conditioning such sentence on requirements permitted by law, including a requirement that an individual spend time in the county jail. We conclude that there was no breach of the plea agreement.[2]

Music next contends that his plea was involuntary because: (1) he was not advised of the factors the Board of Prison Terms and Paroles would consider in setting a minimum term; and (2) the plea was induced by fear of addi-

---

[2]We note that Music's failure to allege any breach until some 2 years after sentencing belies his position on this issue. If Music truly believed that he had bargained for a suspended sentence with no conditions, one would expect an objection at sentencing and/or an earlier motion to withdraw his plea.

tional prosecution. Both contentions are without merit.

■ With respect to the actions of the Board, the State correctly points out that a defendant need only be advised of all the direct consequences of a plea, and not possible collateral consequences. *State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). The plea agreement signed by Music states that "[t]he minimum term of sentence is set by the Board of Prison Terms and Paroles. The Judge and Prosecuting Attorney may recommend a minimum sentence . . . but the Board does not have to follow their recommendation." Clearly, Music was informed that the Board would determine his minimum sentence. This determination was a direct consequence of his plea. However, the possibility that Music's prior convictions could result in a minimum sentence longer than that recommended by the court was a collateral consequence. This possibility was controlled by the Board's discretionary power, and a defendant need not be advised of a possible effect of a plea that results from the discretionary decision of another state agency. *State v. Brown,* 29 Wn. App. 770, 778, 630 P.2d 1378 (1981).

■ Regarding Music's contention that his plea was induced by the prospect of additional charges, it is well settled that a "guilty plea induced by a prosecutorial threat to file increased charges . . . does not necessarily vitiate an otherwise voluntary plea." *State v. Swindell,* 93 Wn.2d 192, 198, 607 P.2d 852 (1980). In *Bordenkircher v. Hayes,* 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978), the United States Supreme Court held that a threat to prosecute a defendant as a habitual offender was not coercive even though the threat was made because the defendant refused to plead guilty to a lesser offense. The Court stated:

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"— and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas."

*Chaffin* v. *Stynchcombe,* [412 U.S. 17 (1973)] at 31. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher,* at 364.

Though Music suggests that the belated filing of the more serious charges, *i.e.,* the deadly weapon and firearm allegations, was a surprise and therefore coercive, his opening brief states at page 13:

In negotiations between the prosecutor and the defense counsel the issue of pursuing a 7½ year mandatory sentence was discuessed [*sic*]. This discussion was related to the defendant as a threat of additional prosecution if he did not agree to the plea of guilty.

This statement establishes that the filing of the more serious charges was no surprise to the defendant.

Furthermore, Music's suggestion that the deadly weapon charge was without foundation ignores the fact that several witnesses saw Music wielding what appeared to be a gun. Although no gun was ever recovered, police recovered a .22 caliber pistol holster and 19 rounds of .22 caliber ammunition from Music's car. Music also admitted pointing a pistol, but claimed it was a BB gun. In short, Music's plea was not improperly induced by the State's agreement to dismiss the deadly weapon and firearm allegations in exchange for a plea of guilty to the offense of attempted assault in the second degree.

Music also contends that there was no factual basis for his guilty plea. In determining the existence of a "factual basis" for a plea, the trial court may consider the defendant's explanations of what occurred and if that is absent or insufficient, the necessary factual basis may be established from any reliable source, including a recitation by the prosecutor of the evidence the State intends to offer.[3] *State v. Newton,* 87 Wn.2d 363, 369, 552 P.2d 682

---

[3]There is dicta in *In re Taylor,* 31 Wn. App. 254, 259, 640 P.2d 737 (1982)

(1976); *accord, In re Barr,* 102 Wn.2d 265, 684 P.2d 712 (1984); *State v. Osborne,* 102 Wn.2d 87, 684 P.2d 683 (1984); *State v. Smith,* 40 Wn. App. 67, 696 P.2d 1269 (1985) (Division One); *In re Teems,* 28 Wn. App. 631, 635, 626 P.2d 13 (1981).

In the instant case, the only factual basis in the record other than the prosecutor's offer of proof is the following written statement: "On July 12, 1979, I attempted to assault Mark Reimers with an instrument likely to produce harm. This happened in Snohomish County". Under *In re Taylor,* 31 Wn. App. 254, 640 P.2d 737 (1982) and the cases cited therein, this statement is clearly insufficient, standing alone, to establish the requisite factual basis for the crime of assault in the second degree. The question, then, is whether the prosecutor's offer of proof is sufficient to satisfy the requirement. The prosecutor's offer of proof included a recitation of evidence that the defendant "pointed a pistol at [the victim] and threatened to blow his head off." This is sufficient standing alone to establish a factual basis for the crime of attempted assault in the second degree. The factual basis is even more firmly established when this statement is read in conjunction with the defendant's own statement quoted above.

Music also argues that he should be permitted to withdraw his plea because the charge of attempted assault is not a violation covered by the Washington Criminal Code. Our cases have defined assault to include an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt, if not prevented. *State v. Krup,* 36 Wn. App. 454, 457, 676 P.2d 507 (1984). Citing this definition, Music argues as follows: (1) assault is defined as an *attempt* to do something; (2) Music was charged with

---

(Division Three) suggesting that the defendant must orally acknowledge the prosecutor's statement. When read in light of Division Three cases decided both before and subsequent to *In re Taylor,* it is clear that the court is recommending this approach as a preferred procedure, but is not mandating such a procedure as a prerequisite to assessing the existence of a factual basis.

attempted assault; (3) this amounts to an *attempt to attempt*; and (4) such a result is absurd.

However, as the State correctly points out, our decisions recognize two general types of assault.

> One concept is that an assault is an *attempt* to commit a battery. There may be an *attempt* to commit a battery, and hence an assault, under circumstances where the intended victim is unaware of danger. Apprehension on the part of the victim is not an essential element of that type of assault. . . .
>
> The second concept is that an assault is "committed merely by putting another in apprehension of harm whether or not the actor actually intends to inflict or is incapable of inflicting that harm."

(Italics ours.) *Krup,* at 458 (quoting *United States v. Rizzo,* 409 F.2d 400, 403 (7th Cir.), *cert. denied,* 396 U.S. 911, 24 L. Ed. 2d 187, 90 S. Ct. 226 (1969)). Thus, an assault may be charged when there is an attempt to commit a battery, or as in the present case, it may be charged when an unlawful act places another in apprehension of harm. "Attempt to attempt" problems may arise with respect to the first type of assault because the *attempt* to commit a battery is an element of that type of assault. Thus, a charge of attempted assault would actually be a charge of attempting to attempt to commit a battery. Some courts have refused to recognize such a crime because of the illogic involved in an "attempt to attempt." *See People v. Etchison,* 123 Mich. App. 448, 333 N.W.2d 309, 311 (1983). However, since there is no attempt element in the second type of assault, a charge of attempted assault within that definition is not an "attempt to attempt." There is no logical conflict in charging one with attempting to put another in apprehension of harm.

Finally, we address Music's contention that he was not afforded adequate representation of counsel. This assignment of error is only addressed indirectly in appellant's brief, and it contains no citation of authority in support of the argument. Music's argument merely consists of a series of questions as to why defense counsel did or did not take

certain action. Music has failed to demonstrate that he received ineffective assistance of counsel, and we find this assignment of error to be without merit.

It is manifestly apparent from our discussion of the issues raised by Music's assignments of error that the trial court did not abuse its discretion in refusing to permit him to withdraw his plea of guilty, and in denying his motion to vacate his judgment and sentence.

The order of the trial court is affirmed.

WILLIAMS and WEBSTER, JJ., concur.