127 P.3d 11 (2006)
131 Wash.App. 278
STATE of Washington, Respondent,
v.
Ray Allen GODSEY, Appellant.
No. 23369-3-III.
Court of Appeals of Washington, Division Three.
January 24, 2006.
Reconsideration Denied March 24, 2006.
*13 Jason B. Saunders, Susan F. Wilk, Washington Appellate Project Seattle, WA, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, Attorneys at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Ray Godsey was convicted for various crimes in Spokane County. On appeal, Mr. Godsey contends the trial court erred in allowing evidence of statements he made when arrested and while later receiving medical care, and in refusing to give his proposed attempted third-degree assault instruction. Further, he contends his convictions for both resisting arrest and third-degree assault violate double jeopardy principles. Lastly, he contends the evidence is insufficient to support his convictions for possessing drug paraphernalia and making a false statement. We reject Mr. Godsey's contentions except one. We hold the trial court erred in allowing statements violating Mr. Godsey's physician-patient privilege. Accordingly, we reverse Mr. Godsey's conviction for possessing drug paraphernalia, but otherwise affirm.

FACTS
¶ 2 On May 17, 2004, an undercover task force sought Ray Godsey on warrants. A person suspected to be Mr. Godsey was seen by United States Deputy Marshall Kevin Kilgore leaving a Spokane convenience store. Deputy Kilgore reported his observation to Spokane County Deputy Craig Pannell. Deputy Pannell exited his vehicle and yelled, "Police! Ray Godsey! Stop!" Report of Proceedings (RP) at 294. Mr. Godsey ran and climbed a nearby fence. Deputy Pannell followed and again ordered him to stop. Mr. Godsey stopped, turned around and faced Deputy Pannell with his fists up. He said, "Come on," and took a step toward Deputy Pannell. RP at 402. To keep Mr. Godsey at a distance, Deputy Pannell kicked Mr. Godsey twice in the midsection. Mr. Godsey resumed a defensive stance. Deputy Kilgore struck him in the face with his fist.
¶ 3 Mr. Godsey was wrestled to the ground, struggling against the attempts to handcuff him. He was told he was under arrest for assaulting a police officer and for warrants. At that time, Deputy Pannell informed Mr. Godsey he had the right to remain silent and the right to an attorney. Deputy Pannell asked Mr. Godsey, "Are you Ray Godsey?"; Mr. Godsey responded, "I am not Ray, I have never been called that." RP at 407. In a search of Mr. Godsey's person subsequent to arrest, officers found two clear pipes with burn marks, a syringe, and two zip lock baggies. Subsequent tests on the baggies revealed 1/10 gram of methamphetamine residue.
¶ 4 On the way to the Spokane County Jail, Mr. Godsey was belligerent and threatened the officers. Specifically, he stated, "[y]ou are going to pay for this," to Deputy Pannell. RP at 308. When Deputy Pannell asked if he was threatening him, Mr. Godsey reportedly responded, "[t]ake it for what you want, but I know where you and a lot of other cops live." RP at 308.
¶ 5 Prior to being booked into jail, Mr. Godsey was transported to Deaconess Hospital for injuries to his lip and chin. In the presence of law enforcement, medical personnel questioned Mr. Godsey about drug use. Mr. Godsey eventually admitted using methamphetamine regularly for the past year, including the day before.
¶ 6 The State charged Mr. Godsey with resisting arrest, third-degree assault with intent to prevent or resist lawful apprehension or detention, making a false or misleading statement, possession of drug paraphernalia, and possession of methamphetamine.
¶ 7 In a CrR 3.5 hearing, Mr. Godsey challenged certain post-arrest statements, including his denial he was Ray Godsey, statements allegedly threatening Deputy Pannell, and questioning by medical personnel. He argued the statements were not voluntary and obtained in violation of his Miranda[1] rights. The court held all statements were admissible. At trial, officers testified to Mr. *14 Godsey's admissions of drug use made at the hospital without further objection.
¶ 8 At trial, Mr. Godsey requested the court instruct the jury on the lesser-included offense of attempted third-degree assault. The court refused to give the instruction and held, "there is no such thing . . . as an attempted [assault.]" RP at 461.
¶ 9 Mr. Godsey was convicted of all counts. He appealed.

ANALYSIS

A. Statement Issues
¶ 10 The issue is whether the court erred in allowing the State to present statements made by Mr. Godsey when arrested and while receiving medical treatment.
¶ 11 "Miranda warnings must be given before custodial interrogations by agents of the State; otherwise, the statements obtained are presumed to be involuntary." State v. Willis, 64 Wash.App. 634, 636, 825 P.2d 357 (1992) (citing State v. Sargent, 111 Wash.2d 641, 647-48, 762 P.2d 1127 (1988)). "[T]he term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Sargent, 111 Wash.2d at 650, 762 P.2d 1127 (quoting Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).
¶ 12 However, "[v]olunteered statements of any kind made to police are not barred by the Fifth Amendment." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Further, "[a] voluntary in-custody statement does not become the product of an `in-custody interrogation' simply because an officer in the course of appellant's narration, asks the defendant to explain or clarify something he has already said voluntarily." Berna v. State, 282 Ark. 563, 568, 670 S.W.2d 434 (1984) (relying on the definition of interrogation from Innis, 446 U.S. at 300-01, 100 S.Ct. 1682).
¶ 13 Here, Mr. Godsey mainly contends Deputy Pannell's follow-up question asking what he meant by the statement, "[y]ou are going to pay for this," constituted interrogation because it was designed to solicit an incriminating response. RP at 308. However, Mr. Godsey was not charged for threatening Deputy Pannell. Thus, the prejudicial effect is unclear. Further, Mr. Godsey's original "threat" was a voluntary, unsolicited statement, not subject to Fifth Amendment protection. Deputy Pannell's follow-up query asking Mr. Godsey if his statement was a threat should be interpreted as a neutral inquiry merely intended to clarify what had already been said. Mr. Godsey's response may be viewed as a continuation of his previously volunteered statement. See Stone v. Arkansas, 321 Ark. 46, 900 S.W.2d 515 (1995) (finding officer's request for clarification after a defendant's voluntary admission of guilt to not constitute interrogation for Miranda purposes). In sum, the trial court did not err.
¶ 14 But, the admission of Mr. Godsey's drug use confessions made during his hospital treatment and reported by the law enforcement officers at trial violated his right to physician-patient confidentiality under RCW 5.60.060(4). See State v. Gibson, 3 Wash.App. 596, 598-600, 476 P.2d 727 (1970). Under the circumstances described at the hospital, the law officers were effectively hospital agents. See id. The hospital personnel questioned Mr. Godsey about his drug usage for treatment purposes. The trial court erred at the CrR 3.5 hearing in allowing the evidence at trial.
¶ 15 Mr. Godsey's statements to physicians comprise the sole evidence of the "use" of the paraphernalia found in his possession. Although other evidence in the record would support bare possession of drug paraphernalia, RCW 69.50.412(1) proscribes the "use" of drug paraphernalia to inject, inhale or otherwise ingest a controlled substance. RCW 69.50.412(1). Bare possession is not unlawful. Id. The conviction is wrongfully supported by the hospital evidence because the State argued at trial that the statements proved recent use of the drug paraphernalia. Because the remaining evidence is insufficient, the improper statements were not harmless error. We agree with Mr. Godsey that the taint of the hospital evidence violating his physician-patient privilege is strong enough to merit reversal *15 of his conviction for possessing drug paraphernalia.

B. Proposed Attempted Third Degree Assault Instruction
¶ 16 The issue is whether the court erred in refusing to give the jury a proposed instruction on attempted third degree assault.
¶ 17 Jury instructions are sufficient if they allow the parties to argue their theory of the case, and when read as a whole properly inform the jury of the applicable law. State v. Riley, 137 Wash.2d 904, 909, 976 P.2d 624 (1999) (citing State v. Rice, 110 Wash.2d 577, 603, 757 P.2d 889 (1988)). Our standard of review depends on whether the trial court's refusal to give a jury instruction was based on a matter of law or of fact. State v. Walker, 136 Wash.2d 767, 771, 966 P.2d 883 (1998). We review the adequacy of jury instructions based on an error of law de novo. State v. Clausing, 147 Wash.2d 620, 626-27, 56 P.3d 550 (2002) (citing State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995)). But, a trial court's refusal to give an instruction based on the facts of the case is a matter of discretion. State v. Lucky, 128 Wash.2d 727, 731, 912 P.2d 483 (1996).
¶ 18 "A lesser included offense instruction is proper only if each element of the lesser offense is necessarily included in the charged offense and `there is sufficient evidence to support an inference that the lesser crime was committed.'" State v. Charles, 126 Wash.2d 353, 355, 894 P.2d 558 (1995) (quoting State v. Speece, 115 Wash.2d 360, 362, 798 P.2d 294 (1990)). Mr. Godsey requested an instruction on attempted third degree assault, but the court denied his request, reasoning no such offense exists.
¶ 19 "Washington recognizes three means of assault: (1) assault by actual battery; (2) assault by attempting to inflict bodily injury on another while having apparent present ability to inflict such injury; and (3) assault by placing the victim in reasonable apprehension of bodily harm." State v. Hall, 104 Wash.App. 56, 63, 14 P.3d 884 (2000) (citing State v. Byrd, 125 Wash.2d 707, 712-13, 887 P.2d 396 (1995)). Here, the jury was instructed on the latter two means of assault.
¶ 20 Contrary to the trial court's reasoning, Washington courts have recognized the lesser-included offense of attempted assault by placing the victim in reasonable apprehension of bodily harm. State v. Music, 40 Wash.App. 423, 432, 698 P.2d 1087 (1985); Hall, 104 Wash.App. at 64-65, 14 P.3d 884. Because the `apprehension' type of assault lacks an attempt element, it is feasible to convict someone of attempting an assault by such means. Music, 40 Wash.App. at 432, 698 P.2d 1087.
¶ 21 The State concedes this error and admits attempted third degree assault can be a lesser-included offense of third-degree assault. Nonetheless, the State contends the instruction was not warranted under the facts because the evidence fails to demonstrate Mr. Godsey took a substantial step to use unlawful force to place Deputy Pannell in apprehension of bodily injury, but was prevented from carrying out the act. See Hall, 104 Wash.App. at 65, 14 P.3d 884 (citing Music, 40 Wash.App. at 432, 698 P.2d 1087). The State is correct.
¶ 22 Mr. Godsey faced Deputy Pannell with his fists up, invited him to "[c]ome on," and took a step toward him. RP at 402. At trial, Deputy Kilgore characterized Mr. Godsey's actions as "[a] charge. He was in a fighting stance and he charged him." RP at 298. Similarly, Deputy Pannell likened Mr. Godsey's actions to "charging" and stated, "he came at me with his fists up." RP at 402. At that point, Deputy Pannell felt threatened enough to kick Mr. Godsey to keep him at a distance. See RP at 405 ("Because of his stance, his posture, the look on his face. . . . Then with his hands up in a fighting stance, that scared me. Then when he came at me.").
¶ 23 Under these facts, Mr. Godsey completed an assault by means of causing apprehension of imminent bodily harm; Mr. Godsey clearly created apprehension in Deputy Pannell, causing him to take defensive measures. Even when viewed in the light most favorable to Mr. Godsey, no facts support the idea that Mr. Godsey was prevented from carrying out this type of assault. Further, it is likely that this conduct falls under the second means of assault submitted to the juryan attempt to cause bodily injury. Thus, an attempt instruction would be barred *16 under Music. See Music, 40 Wash.App. at 432, 698 P.2d 1087, (declining to recognize an attempt to inflict bodily injury).

C. Double Jeopardy
¶ 24 The issue is whether Mr. Godsey's convictions for both resisting arrest and third degree assault violate double jeopardy principles. Mr. Godsey contends he cannot be convicted of both resisting arrest and assault arising out of the same incident. He argues because the former is a lesser-included offense of the latter, the offenses are the same for purposes of double jeopardy.
¶ 25 The Double Jeopardy Clause of the Fifth Amendment offers three separate constitutional protections coextensive in Washington. State v. Gocken, 127 Wash.2d 95, 100, 896 P.2d 1267 (1995). "One aspect of double jeopardy protects a defendant from being punished multiple times for the same offense." State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
¶ 26 Under RCW 9A.76.040(1): "A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him." Third degree assault required the State to prove Mr. Godsey, "[w]ith intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension of himself or another person, assault[ed] another." RCW 9A.36.031(1)(a).
¶ 27 Here, each of the statutory provisions does not require proof of an independent fact. Both charges require intent to prevent arrest. Assault under RCW 9A.36.031(1)(a) necessarily requires an assault; resisting arrest does not. But, resisting arrest requires no proof independent of that also required for an assault charge under RCW 9A.36.031(1)(a). See RCW 9A.36.031(1)(a); RCW 9A.76.040(1). Thus, resisting arrest is a lesser-included charge of assault under RCW 9A.36.031(1)(a). See State v. Marshall, 37 Wash.App. 127, 128, 678 P.2d 1308 (1984) (recognizing, without analysis, that resisting arrest is a lesser-included offense of assault under RCW 9A.36.031(1)(a)).
¶ 28 Here, assuming the two offenses are the same for purposes of double jeopardy, it does not appear the same evidence was used to establish both charges. At trial, the State recognized the overlap between the two offenses, but did not rely on the same conduct to establish the assault charge as used to prove the resisting arrest charge. It is clear the State treated Mr. Godsey's fleeing from the scene and struggle to avoid being handcuffed, and the physical altercation between Deputy Pannell and Mr. Godsey as separate offenses, and argued that theory of the case to the jury. See RP at 487-89 ("there is some overlap between [the assault] and the resist because, okay, he is resisting at first, and then he is assaulting in an attempt to aid his resist, and then he is continuing to struggle with them while they are putting the handcuffs on"). RP at 489. Accordingly, double jeopardy principles are not offended here.

D. False Statement Evidence Sufficiency
¶ 29 The issue is whether sufficient evidence supports Mr. Godsey's conviction for making a false statement.
¶ 30 In criminal case evidence sufficiency challenges, this court treats the State's evidence as true and draws all reasonable inferences from all the evidence in favor of the State. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). The conviction will not be overturned if a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980). This court defers to the trier of fact to weigh evidence and resolve conflicting testimony. State v. Bryant, 89 Wash.App. 857, 869, 950 P.2d 1004 (1998) (citing State v. Hayes, 81 Wash.App. 425, 430, 914 P.2d 788 (1996)).
¶ 31 Under RCW 9A.76.175: "A person who knowingly makes a false or misleading material statement to a public servant is guilty of a gross misdemeanor. `Material statement' means a written or oral statement *17 reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties."
¶ 32 Mr. Godsey was charged and convicted under RCW 9A.76.175 for denying he was Ray Godsey at the time of his arrest. Ignoring that he was merely a suspect when first encountered, Mr. Godsey contends insufficient evidence proves this statement was material because law enforcement knew he was Ray Godsey. Thus, he incorrectly contends, they did not rely on the statement.
¶ 33 Even so, the statute provides a statement is material if it is "reasonably likely" to be relied upon by a public servant. See id. It does not require actual reliance. Mr. Godsey cites distinguishable cases because they are based on a different statutory offense, obstructing a law enforcement officer, which courts have interpreted to require reliance by law enforcement. See RCW 9A.76.020; see also State v. White, 97 Wash.2d 92, 99-100, 640 P.2d 1061 (1982); City of Sunnyside v. Wendt, 51 Wash.App. 846, 851-52, 755 P.2d 847 (1988); State v. Contreras, 92 Wash. App. 307, 317, 966 P.2d 915 (1998); State v. Williamson, 84 Wash.App. 37, 42-43, 924 P.2d 960 (1996).
¶ 34 Here, the jury was presented with evidence Mr. Godsey told officers he was not Ray Godsey when asked by officers to confirm his identity for purposes of arrest. The jury could reasonably infer Mr. Godsey knew it was "reasonably likely" officers would rely on this information to confirm his identity. Thus, the evidence was sufficient for the jury to reasonably infer the statement was material.
¶ 35 Affirmed in part. Reversed in part.
WE CONCUR: KATO, C.J., and THOMPSON, J. Pro Tem.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).