The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 5, 2025

**No. A-1-CA-40924**

**TRISHA CONKLIN,**

Plaintiff-Appellant,

v.

**SIERRA VISTA HOSPITAL GOVERNING BOARD and SIERRA VISTA HOSPITAL,**

Defendants-Appellees,

and

**DAVID L. PAUSTIAN, D.O.; SURGICARE, LLC, a New Mexico limited liability corporation; CHG MEDICAL STAFFING, INC., a Delaware corporation; QUORUM HEALTH RESOURCES, LLC; QUORUM HEALTH CORPORATION; and QUINCY HEALTH, LLC,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SIERRA COUNTY**
**Roscoe A. Woods, District Court Judge**

Bencoe & LaCour Law, PC
Lori M. Bencoe
Cherie L. LaCour
Danielle L. Ceballes
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, PA
Tim L. Fields
Elizabeth A. Martinez
Mia Kern Lardy
Albuquerque, NM

for Appellees

**OPINION**

**HENDERSON, Judge.**

{1}     This appeal arises from Appellant Trisha Conklin's claims of medical and hospital negligence against Sierra Vista Hospital, Sierra Vista Hospital Governing Board (collectively, Appellees), and others not party to this appeal under the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -27, -30 (1976, as amended through 2020).[1] Below, Appellees filed a motion to dismiss Appellant's TCA claims under Rule 1-012(B)(1) NMRA, arguing that the district court lacked subject matter jurisdiction to hear Appellant's claims because Appellant gave notice of her tort claims outside of the ninety-day period for giving notice. *See* § 41-4-16(A), (B). After a period of limited discovery regarding the question of jurisdiction, Appellees filed an amended motion to dismiss or, in the alternative, for summary judgment. The district court granted the motion and found that Appellant had failed to timely give notice of her tort claim and declined to extend the time for filing under Section 41-4-16(B)'s exception for a plaintiff who "is incapacitated from giving the notice by reason of injury." Accordingly, the district court concluded that it did not have subject matter jurisdiction over Appellant's TCA claims and dismissed them. On appeal, Appellant argues that the district court erred by finding that Appellant

---

[1]Section 41-4-30 was explicitly enacted as a "new section of the TCA." 2010 N.M. Laws, ch. 22, § 1.

was not "incapacitated from giving the notice." As a matter of first impression, we conclude that a person is "incapacitated" for purposes of giving notice under the TCA if the person, as a result of injury, was unable to prepare and give notice of their tort claim, or was unable to cause another to give such notice on their behalf. Using this definition, we conclude that there was a dispute of fact regarding Appellant's capacity precluding the district court's grant of summary judgment. Therefore, we reverse the district court's dismissal of Appellant's claims and remand for further proceedings.

**FACTUAL BACKGROUND**

{2} The following facts are undisputed. In early February 2018, Appellant, a paraplegic, suffered accidental burns to her buttocks from using a heating pad. On February 7, Appellant sought care from her outpatient primary care provider, who diagnosed her with a second degree burn, cleaned and treated the area, and recommended a follow-up appointment in one week. One week later, Appellant presented to Appellees' emergency room (ER) complaining of flu-like symptoms and pain from her burns. She was admitted to the hospital from the ER and over the next two days received treatment for her burns, which included surgical debridement on February 15, and closure of the wound on February 16. During her hospital admission, Appellant received narcotic pain medications, benzodiazepines, and

antibiotics. She was discharged from the hospital on February 18 and continued to receive nursing and wound care in her home.

{3}    On February 22, Appellant returned to Appellees' ER by ambulance after complaining of post-operative pain and flu-like symptoms. Appellant was not admitted, but was given pain medication and was instructed to return for follow-up with the surgical outpatient clinic the following day. Appellant did so and received no additional care. The next day, on February 24, Appellant returned to Appellees' ER by ambulance, complaining of "uncontrolled pain, excessive sweating[,] and nausea." Appellant was transferred to MountainView Regional Medical Center, where she received treatment in the hospital until March 13. From the time of her discharge through mid-June 2018, Appellant continued to use numerous prescribed narcotic medications to manage her pain, including fentanyl, oxycodone, and morphine. Additionally, Appellant required assistance managing her daily tasks. Appellant first spoke with a law firm regarding her injuries on June 14, 2018, with her mother's assistance. On June 20, 2018, Appellant provided written notice of her tort claim to Appellees. Appellant formally retained counsel on June 28, 2018.

**PROCEDURAL BACKGROUND**

{4}    In January 2020, Appellant filed her complaint for damages resulting from negligence, medical negligence, and hospital negligence. On March 20, 2020, Appellees moved to dismiss Appellant's claims, arguing that the district court lacked

subject matter jurisdiction due to Appellant's "fail[ure] to provide timely notice of her claim as required by the [TCA]." In response, Appellant argued that "[f]acts support a finding . . . that Appellant's time for giving notice was deemed tolled during the time period when she was 'incapacitated from giving [the] notice by reason of her injury.'" Specifically, Appellant asserted that she was incapacitated from February 18, 2018, the date of her discharge from Sierra Vista Hospital, to June 20, 2018, when she filed her tort claim notice. In her motion, Appellant sought "time to conduct discovery about actual notice, and to present fact evidence of actual notice and incapacity by reason of injury." Appellant provided a Rule 1-056(F) NMRA affidavit in support of this request.

{5} During a hearing on Appellees' motion to dismiss in June 2020, the district court granted Appellant's request for limited discovery as to the court's subject matter jurisdiction and converted Appellees' motion into a motion for summary judgment. In September 2021, Appellees filed an amended motion to dismiss, incorporating arguments based on the limited discovery that had been conducted, and moved alternatively for summary judgment. Following multiple evidentiary hearings on the amended motion, the district court made findings of fact, including that Appellant was not "incapacitated from giving [the] notice by reason of injury" and that her notice was therefore untimely. On this basis, the court dismissed Appellant's claims against Appellees with prejudice. Appellant appeals.

**DISCUSSION**

{6}     The main issue on appeal is whether the district court erroneously dismissed Appellant's TCA claims for lack of subject matter jurisdiction because the court incorrectly found that Appellant was not "incapacitated from giving the notice by reason of injury," as required by Section 41-4-16(B), such that she would be relieved of her duty to file notice of her claims within the ninety days required by Section 41-4-16(A). To fully address this issue, we must first clarify our standard of review for certain Rule 1-012(B)(1) motions to dismiss. Then, we address Appellant's arguments on the merits.

**I.     Rule 1-012(B)(1) Motions to Dismiss for Lack of Subject Matter Jurisdiction**

{7}     On appeal, Appellant contests the district court's grant of Appellees' amended motion to dismiss for lack of subject matter jurisdiction. Appellees argue that the district court's dismissal pursuant to Rule 1-012(B)(1) should be treated as a motion to dismiss even though matters outside the pleadings were received and considered. We disagree with Appellees and explain by clarifying the proper standard of review for Rule 1-012(B)(1) motions to dismiss.

{8}     In *South v. Lujan*, 2014-NMCA-109, 336 P.3d 1000, this Court stated that our review of a Rule 1-012(B)(1) motion to dismiss depends on whether the jurisdictional challenge is facial or is fact-based:

In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. In contrast, in a factual attack, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

. . . .

When the challenge is factual, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.

*South*, 2014-NMCA-109, ¶¶ 8-9 (alterations, internal quotation marks, and citations omitted). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion [in]to a motion for summary judgment." *Id.* ¶ 9 (alteration, omission, internal quotation marks, and citation omitted). "However, a [district] court is required to convert a Rule 1-012(B)(1) motion to dismiss into a Rule 1-012(B)(6) motion or a summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."[2] *Id.* (alterations,

---

[2]Here, the parties do not argue that we should consider the motion as a Rule 1-012(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Therefore, we only consider whether Appellees' motion should have been treated as a motion to dismiss under Rule 1-012(B)(1) or as a motion for summary judgment. *See Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 58, 492 P.3d 586 ("As a general rule, appellate courts rely on adversarial briefing to decide legal issues and avoid reaching out to construct legal arguments that the parties, intentionally or otherwise, have not presented."); *State ex rel. Hum. Servs. Dep't v. Staples* (*In re Doe*), 1982-NMSC-099, ¶ 3, 98 N.M. 540, 650 P.2d 824 (providing that appellate courts should not consider arguments the parties fail to raise because "courts risk overlooking important facts or legal considerations when

omission, internal quotation marks, and citation omitted). This Court, in *South*, did not specify when a jurisdictional question is intertwined with the merits of the case. Thus, it is necessary to review the case history in this area to clarify the applicable standard of review.

{9}     In adopting the federal standard of review for jurisdictional challenges in *South*, this Court relied on *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogated in part on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). The Tenth Circuit held that "[t]he jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Id.* at 1003. In *Holt*, the plaintiff's parents were killed after another vehicle slid on an ice slick and hit their car. *Id.* at 1002. The plaintiff brought claims against the United States under the Federal Tort Claims Act, alleging that the United States Army Corps of Engineers released water from a flood control pool, which subsequently created the ice slick. *Id.* The plaintiff claimed that the United States was negligent when it failed "to warn the public . . . of the icy road conditions" and failed "to clear the hazardous road conditions." *Id.* The United States sought to dismiss the plaintiff's claims for lack of subject matter jurisdiction because the government was immune from suit,

---

they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories" (alteration, internal quotation marks, and citation omitted)).

pursuant to a provision of the federal Flood Control Act of 1928, *id.*, which provides governmental immunity for "any damage from or by floods or flood waters," 33 U.S.C. § 702c. Specifically, the United States asked the district court to find that the "waters which caused the ice slick to form . . . were in fact released for flood control purposes." *Holt*, 46 F.3d at 1003. The district court below had concluded that the government was immune and dismissed the plaintiff's claims pursuant to the federal equivalent of Rule 1-012(B)(1). *See Holt*, 46 F.3d at 1003. On appeal, the United State Court of Appeals for the Tenth Circuit affirmed the district court's decision to grant the plaintiff's motion to dismiss under the federal equivalent of Rule 1-012(B)(1), rather than convert the motion into one for summary judgment, because "resolution of the jurisdictional issue—i.e., whether the government is immune from suit under [the Flood Control Act of 1928]—does not depend on the [Federal Tort Claims Act,] which provides the substantive claims in the case." *Holt*, 46 F.3d at 1003. Thus, the jurisdictional issue was not intertwined with the merits of the plaintiff's case, *id.*, and the district court was not required to consider the United States' motion as one for summary judgment.

{10}     We read *Holt* to require more than the same statute to be at issue for the jurisdictional claim to be intertwined with the merits of the case. The jurisdictional issue in *Holt* required a determination of whether certain facts (the status of the water that caused the ice slick) entitled the United States to immunity. This factual

determination was wholly separate from the merits of the plaintiff's case, which instead required a determination of whether certain facts (the United States' efforts to warn of or to correct the hazardous road conditions) subjected the United States to liability for negligence. Thus, the district court properly considered evidence outside of the pleadings, namely, evidence related exclusively to the factual dispute over the waters' status, without converting the United States' motion into one for summary judgment. By contrast, if the district court had considered evidence outside of the pleadings that related to a factual dispute regarding jurisdiction *and* the merits of a plaintiff's case, the district court would have to rule on the motion as one for summary judgment. *See Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987) ("We find that the determination of whether [the plaintiff] qualifies as an employee under the federal discrimination statutes is both a jurisdictional question and an aspect of the substantive claim in her discrimination action. . . . [T]he motion was appropriately characterized as a motion for summary judgment."). Therefore, we conclude that a jurisdictional issue is so intertwined with the merits of the case, requiring the district court to convert a Rule 1-012(B)(1) motion into one for summary judgment, when resolution of the jurisdictional issue requires resolving factual disputes that bear on both jurisdiction and the merits of the underlying claim.

{11}     When a Rule 1-012(B)(1) motion to dismiss for lack of subject matter jurisdiction is converted into a motion for summary judgment because the

jurisdictional issue is intertwined, the motion may only be granted if "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law," *see Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 6, 310 P.3d 611 (internal quotation marks and citation omitted). This is consistent with how New Mexico appellate courts review all motions for summary judgment. In resolving a Rule 1-012(B)(1) motion where the jurisdictional issue is intertwined, the district court may not resolve any disputes of fact regarding the intertwined jurisdictional issue. Though the district court has discretion "to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 1-012(B)(1)," *South*, 2014-NMCA-109, ¶ 9 (alteration, internal quotation marks, and citation omitted), once the motion is converted into one for summary judgment, it is inappropriate for the district court to weigh evidence and judge the credibility of witnesses, *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 27, 139 N.M. 12, 127 P.3d 548. Therefore, if the district court converts a Rule 1-012(B)(1) motion into one for summary judgment because the jurisdictional issue is intertwined, any genuine disputes of fact must be resolved by a jury as a threshold matter to determine jurisdiction. *See Callaway v. N.M. Dep't of Corr.*, 1994-NMCA-049, ¶ 8, 117 N.M. 637, 875 P.2d 393 (reversing the district court's determination of jurisdiction when there were disputed facts because the issue was "to be determined by the trier of fact"); *see also Erwin v. City of Santa Fe*, 1993-NMCA-065, ¶ 10, 115 N.M. 596,

855 P.2d 1060 (holding that a question of fact about whether a minor was incapacitated from giving notice precluded summary judgment).

{12}     In summary, when reviewing a Rule 1-012(B)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must first assess whether the jurisdictional issue presented in the motion is intertwined with the merits of the case. If the jurisdictional issue is not intertwined, the district court may rule on the motion as a motion to dismiss. If the jurisdictional issue is intertwined, the district court must review the motion as one for summary judgment. If there are no disputes of fact, and the movant is entitled to judgment as a matter of law, summary judgment must be granted. If there is a genuine dispute of fact, the dispute must be resolved by a jury. With this framework in mind, we consider the procedural posture of the case before us.

{13}     Here, it is uncontested that Appellees' jurisdictional challenge was factual and that the district court considered and referenced evidence outside of the pleadings to resolve the challenge to its jurisdiction. Thus, to determine our standard of review, we must first determine whether the district court could have treated Appellees' motion as one brought pursuant to Rule 1-012(B)(1), or whether it had to convert the motion into one for summary judgment. As explained above, the question before us is whether "resolution of the jurisdictional question is intertwined with the merits

of the case." *See South*, 2014-NMCA-109, ¶ 9 (internal quotation marks and citation omitted). We conclude that the jurisdictional issue is intertwined.

{14}     In their motions, Appellees assert that Appellant did not provide timely notice of her TCA claims and thus the district court lacks jurisdiction. In response, Appellant argues that her notice was timely because she was "incapacitated from giving the notice by reason of injury" within the meaning of the TCA, thereby tolling the time in which she had to provide notice. Resolution of the jurisdictional issue— whether Appellant was incapacitated from giving the notice—depends on facts that are relevant to Appellant's substantive claim of negligence, including her damages. Thus, the jurisdictional issue is intertwined and we review the district court's grant of Appellees' motions as a grant of summary judgment.

{15}     We review a district court's grant of summary judgment de novo. *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 26, 409 P.3d 930. To the extent that our analysis requires us to engage in statutory interpretation, our review is also de novo. *Maestas v. Zager*, 2007-NMSC-003, ¶ 8, 141 N.M. 154, 152 P.3d 141.

**II.     "Incapacitated From Giving the Notice by Reason of Injury" Under Section 41-4-16(B)**

{16}     Appellant argues that the district court has jurisdiction over her claim because she was "incapacitated from giving the notice by reason of injury" within the

meaning of Section 41-4-16(B), and her notice was thereby timely.[3] Under Section 41-4-16(A), a claimant must provide written notice of the "time, place[,] and circumstances of the loss or injury" within ninety days. Absent such notice, "the [district] court shall be without jurisdiction to consider any suit against the state or local public body . . . 'unless the governmental entity had actual notice of the occurrence.'" *Smith v. State ex rel. N.M. Dep't of Parks & Recreation*, 1987-NMCA-111, ¶ 10, 106 N.M. 368, 743 P.2d 124 (quoting Section 41-4-16(B)). However, "[t]he time for giving notice does not include the time, not exceeding ninety days, during which the injured person is *incapacitated from giving the notice by reason of injury*." Section 41-4-16(B) (emphasis added).

---

[3] Appellant also contests the district court's oral finding that she knew or should have known about her injuries on February 22, 2018. The district court did not include this finding in its written findings of fact or conclusions of law. "On appeal, the reviewing court may consider the [district] court's verbal comments in order to clarify or discern the basis for the order or action of the court below." *Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 11, 111 N.M. 417, 806 P.2d 66. Although we "may look to the oral remarks of the [district] court for clarification of a finding of fact," such remarks cannot be relied upon for reversal. *Hopkins v. Guin*, 1986-NMCA-097, ¶ 11, 105 N.M. 459, 734 P.2d 237. Because the district court failed to include this finding in its written order, we must assume its omission was intentional, barring a formal review of the finding for purposes of reversal. However, because we reverse and remand on other grounds, we remind the district court that whether a plaintiff "with reasonable diligence should have known of the injury and its cause is a question of fact." *See Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 28, 114 N.M. 248, 837 P.2d 442. When conflicting inferences may be drawn by the evidence, this question should be resolved by a jury. *Williams v. Stewart*, 2005-NMCA-061, ¶ 16, 137 N.M. 420, 112 P.3d 281.

{17}   The purposes of the TCA's notice requirement are well settled: "(1) to enable . . . investigat[ion of] the matter while the facts are accessible; (2) to question witnesses; (3) to protect against . . . aggravated claims; and (4) to consider whether to pay the claim or to refuse it." *Martens v. City of Albuquerque*, 2023-NMCA-037, ¶ 5, 531 P.3d 607 (internal quotation marks and citation omitted).

{18}   The TCA does not indicate when a claimant is "incapacitated from giving the notice by reason of injury," and New Mexico courts have yet to address the issue. However, in *Galvan v. Board of County Commissioners*, 261 F. Supp. 3d 1140 (D.N.M. 2017) the United States District Court for the District of New Mexico held that "incapacitated," as used in Section 41-4-16(B), means "without capacity to act, incapable of acting, or powerless to act." *Galvan*, 261 F. Supp. 3d at 1149 (internal quotation marks and citation omitted). Relying on *Galvan*, Appellant asks this Court to adopt a broad definition of incapacity and hold that a claimant is incapacitated under Section 41-4-16(B) when "the plaintiff's injury deprives [them] of physical or mental capacity, making [them] ill or too weak to function normally." By contrast, Defendant asks this Court to hold that a claimant is incapacitated, by reason of injury, from giving notice if they are "mentally incapacitated from making decisions about [their] potential claim." We find neither the definition espoused in *Galvan*, nor the definitions proffered by the parties, to be particularly helpful in resolving the issue at hand. Instead, we will conduct our own statutory interpretation analysis.

{19}   The TCA's notice provision operates as a statute of limitation. *See Tafoya v. Doe*, 1983-NMCA-070, ¶ 16, 100 N.M. 328, 670 P.2d 582. "[E]xceptions to statutes of limitation must be construed strictly." *Slade v. Slade*, 1970-NMSC-064, ¶ 4, 81 N.M. 462, 468 P.2d 627. *But see In re Goldsworthy's Est.*, 1941-NMSC-036, ¶ 23, 45 N.M. 406, 115 P.2d 627 ("[A] statute which tolls the statute of limitations should be liberally construed in order to accomplish that purpose."). In construing the TCA's notice provision, "we seek to achieve the intent of the [L]egislature." *Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶ 19, 143 N.M. 786, 182 P.3d 769. To determine legislative intent, "[w]e look first to the plain meaning of the statute's words." *Id.* (internal quotation marks and citation omitted). "Unless a word or phrase is defined in the statute . . . being construed, its meaning is determined by its context, the rules of grammar and common usage. A word or phrase that has acquired a technical . . . meaning in a particular context has that meaning if it is used in that context." NMSA 1978, § 12-2A-2 (1997). "When appropriate, we will rely on rules of grammar to aid our construction of the plain language of a statute." *Wilson v. Denver*, 1998-NMSC-016, ¶ 16, 125 N.M. 308, 961 P.2d 153. Additionally, when analyzing a statute from a particular act, "we construe the provisions of the [TCA] together to produce a harmonious whole." *Niederstadt*, 2008-NMCA-053, ¶ 19 (internal quotation marks and citation omitted). We also may look to the judicial decisions of other jurisdictions for guidance "when the

[L]egislature does not provide an express definition of an essential statutory term . . . ." *Folz v. State*, 1990-NMSC-075, ¶ 8 n.3, 110 N.M. 457, 797 P.2d 246.

{20} In this case, we first look to the plain language of Section 41-4-16(B). The term "incapacitated" is modified by the phrases "from giving the notice" and "by reason of injury." Section 41-4-16(B). Thus, to qualify for tolling under Section 41-4-16(B), a claimant must have (1) sustained an injury that (2) incapacitates them from (3) giving notice as required by Section 41-4-16(A). The language of Section 41-4-16(B) further clarifies that the tolling provision only applies to cases wherein the claimant is giving "written notice," § 41-4-16(A), rather than in cases where the governmental entity has "actual notice" of the claim.

{21} As it is undisputed in this case that Appellant suffered an injury, we focus our analysis on the latter two elements of the tolling provision. To determine when a claimant is "incapacitated," we turn to the third element of Section 41-4-16(B), which requires us to consider when a person is required to give written notice. Under Section 41-4-16(A), "[e]very person who claims damages from the state or any local public body under the [TCA] shall cause to be presented . . . , within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the [TCA], a written notice stating the time, place[,] and circumstances of the loss or injury." As claims brought under the TCA "are controlled by a discovery rule and the cause of action accrues when the [claimant] knows or with reasonable diligence

should have known of the injury and its cause," *Maestas*, 2007-NMSC-003, ¶ 19, the claimant is required to provide notice of their claims within ninety days from the time their cause of action accrues—or, within ninety days of knowing about the injury and its cause. *Cummings v. Bd. of Regents of Univ. of N.M.*, 2019-NMCA-034, ¶ 23, 444 P.3d 1058. Because the time for a plaintiff to provide notice does not begin until their cause of action accrues, we conclude that the TCA's tolling provision applies when the claimant knows of their injury and its cause such that the period for giving notice has begun to run, but is otherwise "incapacitated" because of injury from giving notice.

{22}    Case law from an out-of-state jurisdiction with similar language in its own tort claims statute is helpful to our understanding of when a person is incapacitated from presenting a tort claim notice. The tolling provision of Minnesota's Tort Claims Act includes an exclusion from the period for giving notice that is virtually identical to the language used by our Legislature: the time during which the person injured "is incapacitated by the injury from giving the notice." Minn. Stat. Ann. § 3.736, subd. 5 (West 2017). In interpreting this provision, the Minnesota Supreme Court held that whether someone is "incapacitated by the injury from giving the notice" is determined by

> whether, on the days for which incapacity from giving notice is claimed, [the] plaintiff was [themself] physically unable as a result of the injury to investigate and otherwise prepare and give legally

> sufficient notice of claim, and, if so, whether plaintiff was during the same time unable to cause another to do it for [them].

*Wibstad v. City of Hopkins*, 190 N.W.2d 125, 127 (Minn. 1971). The Minnesota Supreme Court later clarified that being "incapacitated by the injury . . . conceivably includes more than a claimant's mere physical inability to investigate, prepare, sign, and serve a sufficient legal notice, or to hire an attorney to do so for [them]." *Hestbeck v. Hennepin Cnty.*, 212 N.W.2d 361, 367 (Minn. 1973). There must also be "an objective consideration of all the circumstances . . . , including the claimant's mental ability to comprehend [their] situation, understand what must be done, and be moved to act." *Id.*

{23}     These articulations of incapacity are consistent with our own jurisprudence, which instructs that a claimant is not incapacitated from giving notice of their tort claim if they can cause another person to give notice on their behalf. *See Ferguson v. N.M. State Highway Comm'n*, 1982-NMCA-180, ¶ 13, 99 N.M. 194, 656 P.2d 244 (holding that the notice period would not be tolled when the plaintiffs "had retained counsel before the . . . limit for giving notice had run" and "[t]here [was] no showing that counsel, acting on their behalf, could not have given notice within the time provided by the statute"). The TCA contemplates recovery for both physical and mental injury and does not limit a claimant's "injury" in the way Appellees propose. *See* § 41-4-16(B). Thus, we need not determine whether the claimant's incapacity is mental or physical. Instead, determination of a claimant's "incapacit[y] from giving

the notice by reason of injury," is a fact-dependent inquiry. *See Rider v. Albuquerque Pub. Schs.*, 1996-NMCA-090, ¶ 15, 122 N.M. 237, 923 P.2d 604 ("[District] courts may recognize a disputed question of fact [regarding a minor's capacity] . . . when someone has been specifically hired or appointed to protect [the minor's legal] rights."); *Hestbeck*, 212 N.W.2d at 366-67 ("[I]ncapacity is necessarily dependent upon the particular facts and circumstances of each case . . . ."). Based on the foregoing considerations, we conclude that a person is "incapacitated" within the meaning of Section 41-4-16(B) if the person was, on the days incapacity is claimed, unable as a result of their injury to prepare and give notice of their tort claim, or to cause another to give such notice on their behalf. With this definition in mind, we now turn to the facts of Appellant's case.

## III.  Appellant's Capacity

{24}    As we concluded above, we review the district court's dismissal of Appellant's claims as a grant of summary judgment. Appellant contends that Appellees' showing of untimely notice was insufficient for a grant of summary judgment. We review a district court's grant of summary judgment de novo. *Kreutzer*, 2018-NMCA-005, ¶ 26. "[O]rdinarily [we] review the whole record in the light most favorable to the party opposing summary judgment." *Id.* "Summary judgment is appropriate where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* ¶ 27 (quoting

Rule 1-056(C)). "If the movant establishes that there are no material fact issues and that it is entitled to judgment as a matter of law, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "An issue of fact is 'genuine' if the evidence before the court considering a motion for summary judgment would allow a hypothetical fair-minded fact[-]finder to return a verdict favorable to the non[]movant on that particular issue of fact." *Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 23, 294 P.3d 1276 (internal quotation marks and citation omitted).

{25}     Appellant's argument on appeal misunderstands the procedural burdens involved in granting summary judgment. Appellees met their initial burden that they were entitled to summary judgment by producing evidence that Appellant's notice was untimely. Moreover, Appellees had the benefit of a presumption that Appellant had the capacity to provide timely notice. *See Lent v. Emp. Sec. Comm'n*, 1982-NMCA-147, ¶ 9, 99 N.M. 407, 658 P.2d 1134. Thus, it was Appellant's burden to demonstrate that there was a genuine issue of material fact precluding summary judgment. We are not concerned with any specific quantum of proof with which Appellant had to rebut this presumption. *See Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶¶ 8-9, 148 N.M. 713, 242 P.3d 280 (rejecting the federal standard for

summary judgment, which requires the courts to consider the substantive evidentiary burden of the party opposing summary judgment).

{26} Appellant has presented evidence to demonstrate a genuine question of material fact regarding her incapacity. From February 18, 2018, to June 20, 2018, Appellant received benzodiazepines and several narcotic pain medications, including fentanyl, oxycodone, and morphine. In an affidavit, a medical expert opined that he would have concerns about such medications impairing a "patient's ability to make reasoned decisions." Prior to her first hospitalization, Appellant attested that she was able to care for herself and her apartment. She independently ensured her children attended school, shopped for and purchased groceries, prepared meals, and managed her finances. However, after she was first discharged from the hospital, and during the period she asserts that she was incapacitated, Appellant required her parents' assistance with childcare, financial affairs, personal care/hygiene, housekeeping, property management, nutrition, transportation, and other responsibilities as a result of her injury. During this period, Appellant's father's sworn affidavit states that he picked up her prescriptions, assisted her out of bed, provided meals, and helped her eat and drink. Father also managed Appellant's finances at this time, including keeping track of and paying her bills, after she forgot to pay her rent. Appellant's mother moved into Appellant's apartment to take care of Appellant and Appellant's children, drove Appellant's children to school, and

often cooked for Appellant and the children. She also provided daily wound care for Appellant and assisted Appellant with her personal hygiene. Both Appellant's mother and father helped schedule Appellant's medical appointments and ensured she attended them as her father "d[id] not think [that] she could have remembered [them]." In June 2018, Appellant's two children moved out of state to live with their father because Appellant "still could not take care of them."

{27} Viewing this evidence in the light most favorable to Appellant, Appellant raised an issue of material fact regarding her ability to prepare and give notice of her tort claim during the relevant period as a result of injury. Thus, the district court erred in granting summary judgment. Additionally, in finding that Appellant was not "incapacitated from giving the notice by reason of injury," § 41-4-16(B), the district court improperly resolved this dispute of fact. *See Callaway*, 1994-NMCA-049, ¶ 8. The question of Appellant's incapacity is a jurisdictional question intertwined with the merits, therefore a jury must resolve this dispute of fact before the district court determines whether it has jurisdiction. As such, we reverse and remand for trial with instructions to the district court to allow the jury to decide the factual question of whether Appellant was "incapacitated from giving the notice by reason of injury." *See* § 41-4-16(B).

**CONCLUSION**

{28}     Based on the foregoing, we reverse and remand to the district court for proceedings consistent with this opinion.

{29}     **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**JANE B. YOHALEM, Judge**