[No. 49712-0-I. Division One. March 10, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT L. RICE, *Appellant*.

---

*Christopher H. Gibson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jessica M. Berliner, Deputy,* for respondent.

Cox, J. — The legislature has defined the term "conviction" for purposes of elevating a charge from a misdemeanor to a felony under the domestic violence act.[1] A conviction occurs under that act either at such time as "a plea of guilty has been accepted or a verdict of guilty has been filed."[2] At issue here is whether Robert Rice had "at least two previous convictions" under RCW 26.50.110(5) of the Domestic Violence Prevention Act so as to elevate the current charges against him from misdemeanors to felonies. We hold that the term "two previous convictions" under 26.50.110(5) means two previous pleas or verdicts of guilty to charges of violation of any of the types of orders specified in that statute. Accordingly, there was sufficient evidence to support the convictions in this case. Likewise, the court's denial of Rice's motion to reduce the felony charges to misdemeanors was not based on an erroneous reading of the statute. We affirm.

On January 2, 2001, Kent police officers arrived at the home of Rice's girl friend, Penny Weller-Berto, to serve her with warrants on matters unrelated to the charges in this case. Rice answered the door and told the officers that Weller-Berto did not want to come to the door because she

---

[1] *State v. Jackson,* 91 Wn. App. 488, 492, 957 P.2d 1270 (1998), *review denied,* 137 Wn.2d 1038 (1999).

[2] RCW 9A.46.100.

knew she had outstanding warrants. Rice also told the officers that she had threatened that if he let them enter, she would tell the officers that there was a no-contact order in effect between them. Weller-Berto eventually came to the door and told the officers that Rice had assaulted her on Christmas Eve.

The State charged Rice by amended information with two counts of domestic violence felony violation of a court order, and one count of assault in the second degree—domestic violence. The State dismissed the second degree assault charge before trial. Rice moved pretrial to reduce the felony counts of violation of the no-contact order under RCW 26.50.110(5) to gross misdemeanors. His theory was that his two previous convictions did not elevate the current charges to felony offenses because the prior judgment and sentence covering both convictions was entered on the same date, March 3, 2000. The trial court denied this motion.

Rice waived his right to a jury trial. Following a stipulated facts trial, the court found him guilty of the two counts of felony violation of a court order—domestic violence.

Rice appeals.

## "TWO PREVIOUS CONVICTIONS"

Rice argues that the evidence was insufficient to support the felony charges and that the trial court based its denial of his motion to reduce the felony charges on an incorrect reading of the statute. A single judgment and sentence addressed both of his two previous convictions. He argues that RCW 26.50.110(5), which elevates violation of a protection order from a gross misdemeanor to a felony "if the offender has at least two previous convictions," means "two previous convictions" under separate judgments. We disagree.

Rice's arguments are grounded in interpretation of the provisions of RCW 26.50.110(5). Thus, the appropriate standard of review that we apply here is to review de novo

the trial court's reading of the statute.[3] We will construe statutes to avoid strained or absurd results.[4]

 In *Jackson*, this court applied the definition of "conviction" found in RCW 9A.46.100 to the same term found in former RCW 10.99.040(4)(c) (1997).[5] RCW 9A.46.100 states that:

> As used in RCW 9.61.230, 9A.46.020, or 9A.46.110, a person has been "convicted" at such time as *a plea of guilty has been accepted or a verdict of guilty has been filed*, notwithstanding the pendency of any future proceedings including but not limited to sentencing, posttrial motions, and appeals.[6]

We held that, under this definition, a jury verdict of guilt for each of two previous charges constituted two convictions under the statute, even though judgment and sentences in the two cases were entered after Jackson's conviction on the felony counts.

In 2000, the legislature amended the statute and moved the provisions outlining punishment for violations of court orders as misdemeanor or felony offenses to RCW 26.50.100.[7] " 'Whenever a Legislature had used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby.' "[8] There is nothing in the context of the

---

[3] The construction of a statute is a question of law that we review de novo. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

[4] *State v. Akin*, 77 Wn. App. 575, 580, 892 P.2d 774 (1995).

[5] *State v. Jackson*, 91 Wn. App. 488, 957 P.2d 1270 (1998), *review denied*, 137 Wn.2d 1038 (1999). Former RCW 10.99.040(4)(c) (1997) provided that "A willful violation of a court order issued under this section is a class C felony if the offender has *at least two previous convictions* for violating the provisions of a no-contact order . . . ."

[6] (Emphasis added.)

[7] LAWS OF 2000, ch. 119, § 18.

[8] *State ex rel. Am. Piano Co. v. King County Superior Court*, 105 Wash. 676, 679, 178 P. 827 (1919) (quoting CYCLOPEDIA OF LAW AND PROCEDURE 1150 (1910)). *See also* 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.02, at 197-98 (6th ed. 2000).

legislature's amendment that shows that it intended a different meaning for the word "conviction" in its new location. To reach any other conclusion would be illogical since the two statutes deal with the same subject matter—elevation of charges to felonies in the context of domestic violence cases. Thus, a conviction for purposes of RCW 26.50.110(5) occurs when either a plea of guilty has been accepted or a verdict of guilty has been filed, notwithstanding the pendency of future proceedings. Accordingly, "two previous convictions" occur when there are two prior pleas of guilty, two prior jury verdicts of guilt, or one prior plea and one prior jury verdict of guilt to the charges specified in the statute. For these purposes, the entry of judgment and sentence is not relevant.

Here, two previous convictions were the subjects of a judgment and sentence entered on March 3, 2000. The convictions were for violations of orders issued under RCW 10.99.040, the same statute under which the orders in *Jackson* were entered.[9] The judgment and sentence of March 3, 2000 states that Rice had been "found guilty of the crime(s) charged in the Amended information on 1-21-00 by guilty plea" and that he was adjudged "guilty of the crime(s) of CT1—VIOLATION OF A COURT ORDER—DV, 10.99.040 3; CTII—VIOLATION OF A COURT ORDER, 10.99.040 3." He was sentenced concurrently on the two counts.

This record establishes that Rice had two prior convictions because his guilty pleas to two charges of violation of a court order under RCW 10.99.040 fulfill the statutory criteria. The subsequent entry of one judgment and sentence for those two convictions did not transform them into one conviction.

---

[9] Rice's previous convictions were for two separate incidents. Rice's trial attorney in this case stated in a brief that the incidents were several days apart. On appeal, Rice's appellate attorney conceded at oral argument that Rice's trial attorney's statement is the only information on the issue in the record. For purposes of our analysis, we accept these statements as true.

Rice cites an older definition in *Black's Law Dictionary* to support his argument that "conviction" means something different than what we describe above:

> In a general sense, the result of a criminal trial which ends in a judgment or sentence that the accused is guilty as charged. The final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere . . . .[10]

Rice argues that the phrase "guilty as charged" means that a single conviction encompasses all charges tried together. This view conflicts with the legislature's intended meaning, as expressed in the statute and *Jackson*, and is a strained reading of the old dictionary definition.[11] We reject it.

Rice also argues that the statute governing penalties for violation of domestic violence protection orders is analogous to the habitual offender statute, and should be interpreted similarly. This argument is wholly unpersuasive.

The habitual offender statute, now codified at RCW 9.92.090, increases the punishment for a person who commits a crime after "previously hav[ing] been *twice convicted*" of certain enumerated crimes or having been previously convicted of one, more serious, crime. In *State v. Jones*,[12] our Supreme Court considered whether a person who was convicted of three crimes on the same day could be considered a habitual offender. The court held that the increased punishment could apply only to an offense committed after conviction for the previous one or ones.[13] The court based this conclusion on the purpose of the statute, and the majority rule in other states with similar statutes. The court stated that:

---

[10] BLACK'S LAW DICTIONARY (6th ed. 1990).

[11] The most recent edition of the same dictionary defines conviction, in relevant part, as: "1. The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty. 2. The judgment (as by a jury verdict) that a person is guilty of a crime." BLACK'S LAW DICTIONARY 335 (7th ed. 1999).

[12] 138 Wash. 110, 244 P. 395 (1926); *see also State v. Rinier*, 93 Wn.2d 309, 314, 609 P.2d 1358 (1980).

[13] *Jones*, 138 Wash. at 112.

it is to be borne in mind that the habitual criminal statute was passed in the hope of working a reformation of criminals, and, when that hope of reformation had passed, the increased punishment should be meted out, but only then. If that is the purpose of the act, then it should be so interpreted that the increased punishment should not be inflicted until an opportunity for reformation had been given. In many of the states it is expressly provided that the increased punishment shall apply only to offenses committed after the first conviction.[14]

■ Rice argues that the domestic violence statute is analogous because the legislature stated in its findings related to the statute that:

> Given the lethal nature of domestic violence and its effect on all within its range, the community has a vested interest in the methods used to stop and prevent future violence. Clear standards of quality are needed so that perpetrator treatment programs receiving public funds or court-ordered referrals can be required to comply with these standards.[15]

But the above statement does nothing to convince us that our reading of the word "conviction" should be other than as we have discussed above. A declaration of policy in a legislative act serves only as an important guide in determining the intended effect of the operative sections.[16] To conclude that the quoted statement, which is focused on the quality of treatment programs for the perpetrators of domestic violence, affects the conditions under which a violation of a no-contact order is elevated to a felony would turn the statute on its head. We decline to do this.

■ Even if we were to consider the legislative findings in guiding us in interpreting the word conviction, we believe it most appropriate to look at other findings. The statement of

---

[14] *Jones*, 138 Wash. at 111 (citations omitted).

[15] LAWS OF 1991, ch. 301.

[16] *Kilian v. Atkinson*, 147 Wn.2d 16, 24, 50 P.3d 638 (2002) ("Simply because 'age' is included in the statement of purpose under [one section of the statute] does not support insertion by the court of 'age' in the list of protected classes specified in [another section]. If 'age' is to be added to the statute, it must be added by the Legislature, which, despite numerous amendments since the statute was first enacted in 1949, has not done so.").

intent in the statute accompanying the finding that Rice quotes explains that the legislature's primary concern is to protect the victims of domestic violence:

> The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide. . . . It is the intent of the Legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate the attitude that violent behavior is not excused or tolerated. Furthermore, it is the intent of the legislature that criminal laws be enforced without regard to whether the persons involved are or were married, cohabiting, or involved in a relationship.

It appears to us from the above passage that the primary purpose of this law is to protect victims through elevated sanctions for repeat offenses, rather than to merely rely on rehabilitative efforts for repeat perpetrators of domestic violence.

Rice also cites *State v. Adcock*[17] to support his argument. In that case, this court declined to apply the habitual offender analysis, by analogy, to a sentencing provision of the Juvenile Justice Act of 1977, RCW 13.40.020(7)(a).[18] This court's statement in *Adcock* that the "statutes have different purposes and accomplish different results" applies equally to this case.[19]

Rice also argues that this court should analogize this statute to the habitual criminal statute because the legislature was aware of our Supreme Court's interpretation of that statute when it used similar language in this statute. We again disagree.

■ In construing statutes, the court presumes that the legislature is familiar with past judicial interpretation of its

---

[17] 36 Wn. App. 699, 676 P.2d 1040, *review denied*, 101 Wn.2d 1018 (1984).

[18] *Adcock*, 36 Wn. App. at 704.

[19] *Adcock*, 36 Wn. App. at 704.

enactments.[20] But in defining the term "Persistent Offender," a contemporary enactment similar to the habitual offender statute, the legislature chose to state explicitly that the two predicate convictions required for classification under the statute must take place on separate occasions.[21] Presumably, the legislature was aware of the courts' interpretation of the habitual offender statute when it wrote this language as well. The legislature's decision to state explicitly that the convictions must take place on separate occasions in that statute, and not in the domestic violence offender statute, suggests that the legislature did not mean for the domestic violence statute to be interpreted in the way Rice argues. Our analysis in the previous portions of this opinion of the significance of the word "convictions," common to both statutes elevating violation of the no-contact order to felonies, reinforces our view that the legislature's awareness of the habitual offender statute made no difference to its focus in this statute.

Rice argues that, because he had only one adjudication, he had only one "chance at rehabilitation." The term conviction, as the legislature uses it in this statute, does not require such a chance. Moreover, Rice's argument ignores the fact that he had signed the protection order he violated, and that order was entered following a previous domestic violence incident. Thus, unlike the types of crimes covered by the habitual offender statue, Rice had an additional opportunity for rehabilitation following his involvement with the court that resulted in the order.

In sum, the prior guilty pleas to violations of orders issued under RCW 10.99.040 constituted "convictions" for

[20] *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984).

[21] RCW 9.94A.030(32) (" 'Persistent offender' is an offender who: (a)(i) Has been convicted in this state of any felony considered a most serious offense; and (ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions, whether in this state or elsewhere, of felonies that under the laws of this state would be considered most serious offenses and would be included in the offender score under RCW 9.94A.525; provided that of the two or more previous convictions, at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted.").

purposes of RCW 26.50.110(5). There were two convictions, as established on the face of the March 3, 2000 judgment and sentence. There was sufficient evidence to support the felony convictions in this case, and the trial court correctly ruled in rejecting the argument to the contrary.

We affirm the trial court's denial of Rice's motion to reduce the charges, and the judgment and sentence.

BECKER, C.J., and SCHINDLER, J., concur.