[No. 51003-7-I.   Division One.   December 1, 2003.]

THE CITY OF AUBURN, *Petitioner*, v. JUAN JOSE SOLIS-MARCIAL, *Respondent.*

*Daniel B. Heid, City Attorney*, for petitioner.

*Donna P. McCrumb* (of *The Law Office of Donna McCrumb, P.S.*), for respondent.

ELLINGTON, J. — Juan Solis-Marcial was charged with violation of a permanent protection order. The charge was dismissed because the order had not been personally served upon him before the alleged offense. However, the Domestic Violence Prevention Act[1] requires knowledge of a protection order, not personal service, as a prerequisite to a criminal charge for its violation. Dismissal was therefore improper, and we remand for reinstatement of the charge.

## FACTS

In May 2001, Kimberly Olson filed a petition in Auburn Municipal Court for a temporary protection order against her former boyfriend, Juan Jose Solis-Marcial. The court granted a 14-day protection order and set a hearing for entry of a permanent order for June 21, 2001. Solis-Marcial

---

[1] Ch. 26.50 RCW.

was personally served with the protection order and with notice of the hearing on the permanent order.

Solis-Marcial failed to appear at the hearing. The court entered a permanent order with terms identical to those of the temporary order. Since Solis-Marcial was not present, he could not be immediately served. He was not personally served with the permanent order until July 9.

Meanwhile, Solis-Marcial filed his own petition for a protection order against Olson. On June 29, a hearing on his petition was held in Auburn Municipal Court. Both Olson and Solis-Marcial appeared. The court denied Solis-Marcial's petition and offered to grant Olson a protection order instead. In response, Olson allegedly stated that she already had a protection order against Solis-Marcial.

On July 4, Solis-Marcial went to Olson's residence and made eye contact and gestured in her direction, violating the terms of Olson's permanent protection order. Olson called police. The city of Auburn (City) charged Solis-Marcial with violation of a protection order.

Solis-Marcial moved to dismiss because he had not been personally served with the permanent order at the time of its violation. The court granted the motion and dismissed the charge. King County Superior Court affirmed. We granted the City's motion for discretionary review, and now reverse.

## DISCUSSION

■ ■ The City contends personal service is not an element of the offense of violation of a protection order. The City argues that according to the Auburn criminal code section under which Solis-Marcial was charged and the Domestic Violence Prevention Act provisions it incorporates, the question is not whether the order had been personally served, but whether there has been a willful or knowing violation. We agree.

Solis-Marcial was charged under former Auburn Criminal Code 9.03.040 (1994),[2] which provided:

Willful violation of a court order issued under this section or of an order issued by any court of competent jurisdiction under equivalent statute or ordinance, is a gross misdemeanor punishable by one year in jail and/or a fine of $5,000.

The Auburn Criminal Code adopted RCW 9A.08.010(4),[3] which provides that "[a] requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears." The issue, then, is whether the legislature plainly intended personal service to be a further requirement to establish this offense.

The Domestic Violence Prevention Act requires that a permanent protection order be personally served (unless the respondent is served at the court hearing, or an order for substitute service of the temporary order has been entered).[4] The municipal court interpreted this provision as requiring either in-court notification or personal service as a prerequisite to criminal prosecution for violation of such an order. This is incorrect. RCW 26.50.090 requires that service be made, but makes no mention of service as a prerequisite to enforceability of the order.

We therefore look to other provisions of the Domestic Violence Prevention Act for guidance.[5] These provisions make clear that a protection order is enforceable so long as the person restrained knows of the order. The act's provision on penalties for violation of an order, for example, states:

---

[2] *Recodified as* Auburn Criminal Code 9.26.900 *by* Ordinance 5682 (June 20, 2002).

[3] Former Auburn Criminal Code 9.01.030 (1994), *recodified as* Auburn Criminal Code 9.02.900 *by* Ordinance 5682 (June 20, 2002).

[4] RCW 26.50.090(1).

[5] *See Tommy P. v. Bd. of County Comm'rs*, 97 Wn.2d 385, 392, 645 P.2d 697 (1982) (provisions of an act must be considered in relation to each other and, if possible, harmonized to ensure proper construction for each provision).

Whenever an order is granted under this chapter . . . and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence . . . or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location . . . is a gross misdemeanor except as provided in subsections (4) and (5) of this section.[6]

This section requires only knowledge and makes no mention of service. In RCW 26.50.115, the legislature addressed both knowledge and service:

(1) When the court issues an ex parte order pursuant to RCW 26.50.070 or an order of protection pursuant to RCW 26.50.060, the court shall advise the petitioner that the respondent may not be subjected to the penalties set forth in RCW 26.50.110 for a violation of the order unless the respondent knows of the order.

(2) When a peace officer investigates a report of an alleged violation of an order for protection issued under this chapter the officer shall attempt to determine whether the respondent knew of the existence of the protection order. If the law enforcement officer determines that the respondent did not or probably did not know about the protection order and the officer is provided a current copy of the order, the officer shall serve the order on the respondent if the respondent is present. If the respondent is not present, the officer shall make reasonable efforts to serve a copy of the order on the respondent. . . . After the officer has served the order on the respondent, the officer shall enforce prospective compliance with the order.

Thus, RCW 26.50.115(1) provides that a respondent cannot be prosecuted unless he or she knows of the order. RCW 26.50.115(2) requires the investigating officer to ascertain whether the respondent knew of the existence of the order and, if not, to make reasonable efforts to serve the order and then enforce prospective compliance. Service, in this context, is the means to supply the missing element of knowl-

---

6 RCW 26.50.110(1).

edge for the purpose of enforcing "prospective compliance." Nothing in these statutes elevates service, standing alone, as an element of enforceability.

The intent of the Domestic Violence Prevention Act is " 'to protect the victim[s] [of domestic violence] and . . . communicate the attitude that violent behavior is not excused or tolerated.' "[7] As the City points out, to mandate personal service as a further requirement of the offense of violation of a protection order would undermine the legislative intent by creating an incentive for domestic violence perpetrators to avoid court appearances and avoid personal service. It cannot be said that a legislative purpose to impose personal service "plainly appears" as a further requirement for establishing violation of a protection order.[8]

Solis-Marcial maintains that personal service of the permanent order is required by due process to provide actual notice of what conduct the order prohibits. He relies on *State v. Leavitt*,[9] in which a conviction for illegal possession of a firearm was reversed because the sentencing court had not informed the defendant, as required by statute, that he was prohibited from possessing firearms even after his sentence was completed. The court held that this failure to comply with the statutory notification requirement prejudiced Leavitt, resulting in a due process violation.[10]

*Leavitt* is not pertinent here. Solis-Marcial was not misinformed, and the service statute is not similar to the notice

---

[7] *State v. Rice*, 116 Wn. App. 96, 104, 64 P.3d 651 (2003) (quoting RCW 10.99.010).

[8] *See* RCW 9A.08.010(4). Solis-Marcial also contends that even if a protection order is enforceable upon its issuance, it cannot serve as the basis for criminal charges for violation unless it has been personally served pursuant to RCW 26.50.090. Solis-Marcial provides no authority for this argument, however, and the various provisions of the Domestic Violence Prevention Act do not support a distinction between enforceability in general and enforceability by means of criminal sanctions for violation. *See* RCW 26.50.115(2) (officer to attempt to serve and prospectively enforce order *if* officer determines respondent probably does not know order exists).

[9] 107 Wn. App. 361, 27 P.3d 622 (2001).

[10] *Leavitt*, 107 Wn. App. at 372-73.

requirement in *Leavitt*. The City must show that Solis-Marcial knowingly violated the order. A trier of fact could find that he knew what conduct was prohibited. Solis-Marcial was personally served with the temporary order, which contained a description of prohibited conduct, gave notice of the hearing on the permanent order, and included the warning that "[f]ailure to appear at the hearing may result in the court granting such relief."[11] He did not contest any of the provisions and failed to appear for the hearing on the permanent order. Nothing in the record suggests any reason to expect that the terms of the permanent order would differ from those of the temporary order.

■ Further, in proceedings in the same court on his own petition for a protection order against Olson, Solis-Marcial obtained a 14-day temporary order which is identical in every way to Olson's temporary order (except that Solis-Marcial was granted a 1,000-yard exclusion distance, whereas Olson sought only a 500-yard distance). The forms used for both orders are identical. Then, at the hearing on Solis-Marcial's permanent protection order, the court denied his petition and offered Olson a protection order instead. Olson allegedly demurred and told the court that she already had one. Solis-Marcial was present during this exchange. His knowledge of the order is thus a fact issue for trial.

The charge of violation of a protection order is reinstated. Reversed and remanded for trial.

Cox, A.C.J., and Schindler, J., concur.

---

[11] Clerk's Papers at 42.