# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50448-1-II |
| Respondent, | |
| v. | |
| CURTIS TREVOR TAYLOR AKA CHRISTOPHER TRAVIS JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J.  —  Curtis T. Taylor appeals from his jury trial convictions for felony violation of a no-contact order and making a false or misleading statement to a public servant.  He argues that the State presented insufficient evidence (1) to establish that he had knowledge of the no-contact order and (2) to sustain his conviction for making a false or misleading statement to a public servant.  Taylor also argues in his statement of additional grounds (SAG) that (1) his counsel was ineffective, (2) his speedy trial rights were violated, (3) the trial court improperly gave the jury his criminal history, (4) the jury instructions were misleading, (5) the State presented false evidence to the jury, and (6) he did not have two prior convictions to constitute a felony.  We hold that the evidence is sufficient to uphold his convictions and that his SAG arguments fail.  We affirm.

FACTS

I. BACKGROUND

In a separate cause number, on June 29, 2016, Taylor appeared via video for a pretrial hearing in Lakewood Municipal Court. A city prosecutor was present. During this proceeding, Taylor requested a "no-hostile" no-contact order. Verbatim Report of Proceedings (VRP) (June 6, 2017) at 83. The court did not specifically address this request but instead, after this request, told Taylor he was to have no contact with Chartrice Tillman. Taylor did not respond to this order. The court then signed in open court a domestic violence no-contact order prohibiting Taylor from contacting Tillman for five years. Taylor did not sign the order.

A judgment and sentence was entered and signed by the court and Taylor. The judgment and sentence marked boxes that said that Taylor was to comply with the "attached . . . No Contact Order" and "[h]ave no contact with Tillman, Chartrice, R." Ex. 6.

On December 16, Lakewood Police Officer Angel Figueroa responded to a domestic disturbance call in an apartment. He knocked on the door and announced himself as police. He continued to knock until a man, later identified as Taylor, yelled through the door that there was nothing going on in the apartment. Officer Figueroa told Taylor that he needed to make sure everything was fine and that he needed to physically see everyone. Taylor said that "he was the only person in the apartment." VRP (June 5, 2017) at 53. After this back and forth went on for about five minutes, Tillman opened the door. Taylor was hiding in the kitchen. Officer Figueroa asked Taylor to step out to the front of the door. Only after repeated prompting from Tillman did Taylor come out of the kitchen. Officer Figueroa placed him in handcuffs and put him in the back of the patrol car. Officer Figueroa then conducted a records check and discovered that there was

2

a no-contact order prohibiting Taylor from contacting Tillman. The State charged Taylor with (1) domestic violence court order violation and (2) making a false or misleading statement to a public servant.

## II. TRIAL

At trial, exhibits 1, 5, and 6, were admitted into evidence. Exhibit 1 is the audio recording of the pretrial hearing held on June 29, 2016. Exhibit 5 is the domestic violence no-contact order signed by the court on June 29, 2016. Exhibit 6 is the judgment and sentence done in open court on June 29, 2016. Officer Figueroa, the city prosecutor, Tillman's neighbor, and Tillman testified for the State. Officer Figueroa and the city prosecutor testified consistently with the above facts. Taylor did not call any witnesses.

The city prosecutor also testified that she had no personal knowledge as to whether Taylor received a copy of the no-contact order. She testified that typically orders and the judgment and sentence would be faxed to the Nisqually Jail where Taylor was held at the time of the pretrial hearing. Tillman's neighbor also testified at trial. She saw Taylor go into Tillman's apartment. The neighbor called 911 because she heard arguing. She heard Taylor tell the officers that he was in the apartment by himself.

Tillman testified that Taylor had shown up at her apartment on the evening of December 16 and was in the parking lot but that he initially would not go inside her apartment, which was located on the second floor. She saw him talking to her neighbor and she did not want him to "argue or get into a lengthy conversation" so she asked him to come upstairs and he did. VRP (June 6, 2017) at 89. She testified that Taylor went inside her apartment that evening.

The jury convicted Taylor as charged with domestic violence court order violation and making a false or misleading statement to a public servant.

Additional facts relevant to the SAG issues will be discussed in the SAG section below.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Taylor argues that there is insufficient evidence to sustain his convictions for violation of a no-contact order and for making a false or misleading statement to a public servant. We disagree.

### A. PRINCIPLES OF LAW

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State has the burden of proving all of the essential elements of the crime beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. Evidence is sufficient if, when viewed in the light most favorable to the State, any rational trier of fact could find that all of the crime's essential elements were proven beyond a reasonable doubt. *Rich*, 184 Wn.2d at 903. When challenging the evidence as insufficient, the defendant admits the truth of the State's evidence and all reasonable inferences that arise therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

### B. KNOWLEDGE OF THE DOMESTIC VIOLENCE NO-CONTACT ORDER

Taylor argues that the State failed to provide sufficient evidence to prove the element that he had knowledge of the no-contact order. Taylor specifically argues that he did not have knowledge of the no-contact order because he was not advised of the specific terms of the order. We disagree.

1.      PRINCIPLES OF LAW

One of the required elements of a felony violation of a domestic violence no-contact order is that the defendant has knowledge of the no-contact order. *State v. Clowes*, 104 Wn. App. 935, 944, 18 P.3d 596 (2001); RCW 26.50.110(1)(a).[1]  A person acts with knowledge when

>       (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
>       (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

2.      KNOWLEDGE

a.      *CITY OF AUBURN V. SOLIS-MARCIAL*

Taylor discusses *City of Auburn v. Solis-Marcial*, 119 Wn. App. 398, 79 P.3d 1174 (2003), for the proposition that since he did not have notice of the actual terms of the no-contact order that he did not have knowledge of the order.  This argument fails.

In *Solis-Marcial*, the defendant was served with a temporary protection order but did not appear at a hearing and had not yet been served with the permanent order.  119 Wn. App. at 400.  Division One of this court held that actual service was not required and that a trier of fact could find that Solis-Marcial "knew what conduct was prohibited" because the temporary order contained a description of the prohibited conduct, gave notice of the hearing on the permanent order, and included a warning that failure to appear at the hearing could result in the court granting relief.  *Solis-Marcial*, 119 Wn. App. at 404.  The court also relied on the fact that Solis-Marcial

---

[1] The legislature amended RCW 26.50.110(1)(a) in 2017.  LAWS OF 2017, ch. 230, § 9.  We cite to the current version of the statute because for our purposes it has remained substantively the same.

was present at a proceeding where the protected party told the court that she had a protection order against Solis-Marcial. *Solis-Marcial*, 119 Wn. App. at 404.

Taylor argues that *Solis-Marcial* is factually distinguishable from his case because Solis-Marcial had notice of all the terms in the order since the temporary order was identical to the permanent order. But here, Taylor argues that he was never advised of all the terms of the order because he was never orally advised of the specific provisions of the order, never signed the no-contact order, and the evidence does not show that he received the order. However, *Solis-Marcial* did not hold that a defendant needs to have notice of all of the specific terms of an order to have knowledge. Instead, the court held that actual service was not required and a trier of fact could find that Solis-Marcial "knew what conduct was prohibited" based on the facts. *Solis-Marcial*, 119 Wn. App. at 404; *see* RCW 26.50.110(1)(a) (requiring that the person to be restrained "knows of the order").

b. *STATE V. MARKING* AND *STATE V. MILLER*

Taylor also relies on *State v. Marking*, 100 Wn. App. 506, 997 P.2d 461 (2000), *overruled in part by State v. Miller*, 156 Wn.2d 23, 123 P.3d 827 (2005), to argue that a no-contact order must contain mandatory warning language, and since the court did not advise Taylor of this warning orally, that he did not know that consent by the protected party does not invalidate the order. In *Marking*, we held that RCW 10.99.040 required a no-contact order to include informative language that violation of the order is a criminal offense and "[y]ou can be arrested even if any person protected by the order invites or allows you to violate the order's prohibitions." 100 Wn. App. at 509, 511-12 (quoting RCW 10.99.040(4)(d)). The court noted that "[a]bsent the warning, one might mistakenly believe that consent to contact by the person protected under the order

invalidates the order's otherwise mandatory prohibition." *Marking*, 100 Wn. App. at 511-12. *Miller* overruled *Marking* by holding that the validity of the underlying no-contact order was not an element of violating a no-contact order charge. 156 Wn.2d at 31. The court in *Miller* explained that it believed *Marking* reached the appropriate result, but this should have been a threshold issue decided by the trial court before admitting the order at trial. 156 Wn.2d at 31.

In sum, *Marking* and *Miller* do not support Taylor's argument that without receiving notice of the "mandatory" language, he lacked sufficient knowledge to sustain a conviction for violation of a no-contact order. Instead, *Miller* holds that the validity of a no-contact order is a threshold question for the court. 156 Wn.2d at 31. Thus, *Marking* and *Miller* are not helpful.

Here, the trial court orally told Taylor he was to have no contact with Tillman and that it was signing a no-contact order, and Taylor signed a judgment and sentence that said Taylor was to comply with the "attached . . . No Contact Order" and "[h]ave no contact with Tillman." Ex. 6. Further, there is circumstantial evidence that Taylor knew of the order at the time the officer found him violating it. Tillman testified that Taylor was reluctant to enter Tillman's apartment. Taylor told Officer Figueroa that he was the only one in the apartment even though he was there with Tillman. When Officer Figueroa entered the apartment, Taylor was hiding in the kitchen.

This is sufficient evidence from which a jury could reasonably conclude that Taylor was aware of a fact, circumstance, or result or has information that would lead a reasonable person in that same situation to believe that fact exists such that Taylor knew all contact with Tillman was prohibited. RCW 9A.08.010(1)(b). Therefore, when viewed in the light most favorable to the State, there is sufficient evidence for a rational trier of fact to find that Taylor had knowledge of

the no-contact order and knew what conduct was prohibited. Accordingly, Taylor's arguments fail.

### C. FALSE OR MISLEADING STATEMENT TO A PUBLIC SERVANT

Taylor argues that the State failed to provide sufficient evidence that his false statement to the officer was material. We disagree.

#### 1. PRINCIPLES OF LAW

Under RCW 9A.76.175, a person is guilty of a crime if they "knowingly make[] a false or misleading material statement to a public servant." A written or oral statement is material if it is "reasonably likely to be relied upon by a public servant in the discharge of his or her official powers or duties." RCW 9A.76.175. There does not need to be actual reliance. *State v. Godsey*, 131 Wn. App. 278, 291, 127 P.3d 11 (2006).

#### 2. MATERIAL STATEMENT

Taylor argues that there was insufficient evidence to establish that his false statement to Officer Figueroa that he was the only one in the apartment was material because the statement was not "'reasonably likely to be relied'" upon by the officer. Br. of Appellant at 11. This argument fails.

Taylor argues that because the officer was responding to a domestic violence call, he had an affirmative duty to make sure everyone was safe. Taylor cites to *State v. Lynd*, 54 Wn. App. 18, 23, 771 P.2d 770 (1989), to support his argument that "Washington Courts have recognized

the need for officers to investigate residences with reported domestic violence." Br. of Appellant at 12.[2]

*Lynd* held that a warrantless search of a residence was justified when an officer knew a 911 call had originated from the home, an incident of domestic violence had just occurred, the defendant was loading things into his vehicle as if he was going to leave, and the defendant did not want the officer to enter the home. 54 Wn. App. at 22-23. However, *Lynd* does not hold that an officer investigating a domestic violence incident inside a residence *must* search a residence even though the officer is not given consent. Instead, Division One of this court held that the warrantless search was justified by the circumstances. *Lynd*, 54 Wn. App. at 23.

Taylor also argues that it was clear from the record that Officer Figueroa was not going anywhere, which is shown how after Taylor was taken into custody he still did a visual check of the apartment for any other occupants. Taylor states that he knew Officer Figueroa would not rely on Taylor's statement because it was only after Officer Figueroa told Taylor that he needed to make sure everyone was fine in the apartment and to see everyone physically that Taylor made his false statement. These arguments are unpersuasive.

---

[2] Taylor also cites to Ninth Circuit cases *United States v. Alvarez*, 638 F.3d 666, 674-75 (9th Cir. 2011), *aff'd*, 567 U.S. 709, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (2012), and *United States v. Bonds*, 784 F.3d 582 (9th Cir. 2015). He quotes Judge Kozinski's concurrence in *Alvarez* for the reasons why people lie. He also quotes Judge Kozinski's concurring opinion in *Bonds* discussing a federal obstruction statute and the importance of the limitation on the statute that a statement must be material. 784 F.3d at 584 (Kozinski, J., concurring). Because Taylor does not rely on these cases later on in his analysis as to why his statement was not "material," we do not rely on them.

There does not need to be actual reliance for a statement to be material; the standard is that the statement has to be "'reasonably likely'" to be relied upon. *Godsey*, 131 Wn. App. at 291 (quoting RCW 9A.76.175).

In *Godsey,* officers asked Ray Godsey to confirm his identity for an arrest and Godsey lied about who he was. 131 Wn. App. at 283, 291. Even though Godsey argued that there was insufficient evidence to prove his statement was material because he contended the officers knew that he was Ray Godsey, Division Three of this court held that "[t]he jury could reasonably infer Mr. Godsey knew it was 'reasonably likely' officers would rely on this information to confirm his identity." *Godsey*, 131 Wn. App. at 291.

Likewise, here, when viewed in the light most favorable to the State, there was sufficient evidence that Taylor's false statement was material to the domestic disturbance investigation. When Officer Figueroa first arrived at the apartment, he knew that there had been a neighbor's call about an argument or fight in an apartment that was "either physical or verbal." VRP (June 5, 2017) at 50. He was in the initial stages of his investigation and did not know who was in the apartment or what had happened, and he attempted to get information from Taylor. Taylor knew that Officer Figueroa was investigating the incident and lied to him, saying he was the only one in the apartment, to attempt to thwart Officer Figueroa's investigation. Given these facts, when examining the evidence in the light most favorable to the State, the jury could infer that Taylor knew it was reasonably likely that Officer Figueroa would rely on Taylor's false statement. Thus, there is sufficient evidence that Taylor's false statement to the officer was "material."

## STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Taylor raises issues about ineffective assistance of counsel, his speedy trial rights, his criminal history, improper jury instructions, false evidence presented to the jury, and the validity of prior convictions. These arguments fail.

### I.  SAG FACTS

#### A.  PRETRIAL HEARING

In a pretrial hearing, defense counsel argued that the two Clark County convictions (exhibits 7 and 11) should not be considered prior convictions because the statements on plea of guilty did not contain the "knowing element." VRP (June 5, 2017) at 15. The trial court responded that it was bound to respect the judgment of another court and allowed the evidence of the prior convictions. Defense counsel also argued that for the two prior convictions, the underlying offenses were from the same victim and the same day so they should be considered one conviction. The trial court noted that "the two were taken as separate cases" and he found that both were valid sentences that included a no-contact order. VRP (June 5, 2017) at 19.

#### B.  BEFORE JURY INSTRUCTIONS

Exhibits 7 and 11 (later withdrawn to become 11A with redactions) were admitted into evidence. Exhibit 7 is a certified copy of the judgment and sentence from Clark County with cause number 121503. Exhibit 11 (redacted as 11A) is another certified copy of the judgment and sentence from Clark County with cause number 121504.

Before the trial court gave the jury instructions with the prior convictions, Taylor's counsel emphasized that it was on the record that she objected to the prior convictions. The trial court said, "[W]e can note in our exhibit record that the defendant did make objections to Exhibit 7 and 11A."

11

VRP (June 6, 2017) at 114. She also told the trial court that she wanted it on the record that Taylor did not believe this was a felony charge because he did not believe all the elements were met.

### C. JURY INSTRUCTIONS

The trial court gave jury instruction number 16 that stated,

> Because this is a criminal case, each of you must agree for you to return a verdict. When all of you have so agreed, fill in the verdict forms to express your decision. The presiding juror must sign the verdict form and notify the judicial assistant. The judicial assistant will bring you into court to declare your verdict.

Clerk's Papers (CP) at 49. The jury later submitted questions to the trial court. One of the questions was "[f]or count 1 do we have to be unan[i]mous in our decision." CP at 51. The trial court wanted to respond "yes," but defense counsel said, "I think it might be better just to say, 'Refer to your instructions.'" VRP (June 7, 2017) at 155-56. The trial court responded to the jury by saying, "Please refer to your jury instructions." CP at 51. After this, the jury submitted another question and asked, "What happens if we cannot come to a unan[i]mous decision." CP at 55. After discussing how to respond, defense counsel again recommended "[g]o back to your instructions." VRP (June 7, 2017) at 168. The State agreed. The trial court then again responded to the jury by saying, "Please refer to the Court's instructions." CP at 55.

### D. VERDICT

The jury found Taylor guilty of domestic violence court order violation and of making a false or misleading statement to a public servant. Defense counsel wanted the jury polled and all of the jurors responded "yes" when asked if this was the verdict of the jury and also when asked was this your verdict.

### E. SENTENCING

During sentencing, Taylor discussed concerns he had with his counsel. He said,

[T]here's been a lot of issues that I've had with Ms. Contris where we don't discuss anything. It's just either I sign this deal or that's it. . . . Anytime I try to discuss anything to her in a civilized manner, she'll just either bombarred [sic] me, she'll just interrupt me or she'll just leave the room, and I really feel it's very unprofessional.

VRP (June 30, 2017) at 184-85. Taylor also wrote letters to the sentencing court with concerns about his counsel. He also expressed that they do not communicate often and he does not understand what she is telling him. He said, "It'll be like a couple months before we talk and then she'll say, court tomorrow." VRP (June 30, 2017) at 185. The sentencing court treated this as a motion for appointment of a new counsel and found that there was no conflict of interest, and it said that it did not think "that there's been any loss of an adequate defense." VRP (June 30, 2017) at 187.

## II. SAG Analysis

### A. Ineffective Assistance of Counsel

Taylor argues that he received ineffective assistance of counsel. He appears to argue that his counsel was ineffective because (1) there was a breakdown in communication, (2) he told his attorney that "I will not sign my speedy trial rights away," yet his attorney signed several speedy trial waivers, and (3) he told his counsel that "I want to challenge my prior [no-contact order convictions]," and he contends he was not able to challenge the prior convictions and did not want to "focus on a defense of no signature." SAG at 4.

### 1. Principles of Law

The claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Lopez*, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018). To prove that he received ineffective assistance of counsel, a defendant must show that defense counsel's conduct

was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, ___ Wn.2d ___, 423 P.3d 842, 847 (2018). "Because both prongs must be met, a failure to show either prong will end the inquiry." *State v. Classen*, 4 Wn. App. 2d 520, 533, 422 P.3d 489 (2018).

Defense counsel's representation is deficient if it falls "'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "There is a strong presumption that defense counsel's conduct is not deficient." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Performance is prejudicial if there is reasonable probability that but for the deficiency the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34.

a. ATTORNEY-CLIENT COMMUNICATION

Taylor argues that his counsel was ineffective because there was a breakdown in attorney-client communication, and "[a]ll she would do is threaten me to take a deal," and his counsel would not talk to him about getting evidence that he thought would be helpful. SAG at 4.

Taylor wrote letters to the sentencing court; in one of them he asked the judge for help because he had twice asked his counsel for help on "appeal dealings" and for copies of the jury evidence packet, and he was concerned that it would be difficult for him to get these documents. CP at 78. He also wrote another letter to the sentencing court before sentencing saying that he and his counsel have "some creative differences." CP at 82. During sentencing, Taylor told the sentencing court that "there's been a lot of issues that I've had with Ms. Contris where we don't

14

discuss anything." VRP (June 30, 2017) at 184. He mentioned that he tried to dismiss her in open court, he wrote letters to her superior, he wrote letters to the Washington State Bar Association, and he wrote letters to her. The sentencing court treated this as a motion for new counsel and said,

> I don't think that there's been any loss of an adequate defense. Ms. Contris was professional during trial. She has a reputation for being a very good and thorough attorney. And so at this point I'm going to deny the motion for appointment of a new counsel.

VRP (June 30, 2017) at 187. Here, Taylor has not explained on the record the exact issues he had with his counsel or when these occurred. He has also failed to show that his counsel's performance fell below an objectively reasonable standard or that this lack of communication prejudiced him in any way.

Taylor also cites documents outside the record including what he "[r]ead in open court . . . 5-10-17," a letter he sent to his counsel, and a letter he sent to his counsel's "superior" that say he was not able to examine evidence, he was missing pages of discovery, there was a breakdown in attorney-client communication, and he would like to talk to a detective. SAG at 5, 8. He quotes these documents but provides no argument. These allegations rely on matters outside the record, and we cannot consider them on direct appeal. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

In conclusion, we hold that Taylor's ineffective assistance of counsel claim based on lack of communication fails.

b. CONTINUANCES

Taylor argues that his counsel was ineffective when he was not brought to trial within 60 days, he told his counsel he did not want to waive his right to a speedy trial, he told counsel that he would not sign any of the continuances, and his counsel signed the continuances. Taylor also

appears to raise as a separate issue that the trial court violated his right to a speedy trial by granting

the continuances. Taylor attached to his SAG five orders continuing trial, but they are not

designated in the clerk's papers and are not properly within the record on review. We cannot

consider matters outside of the record. *McFarland*, 127 Wn.2d at 335; *see also State v. Curtiss*,

161 Wn. App. 673, 703, 250 P.3d 496 (2011). The proper recourse is to raise this issue in a

personal restraint petition, not a SAG. *Alvarado*, 164 Wn.2d at 569.

  c.  PRIOR CONVICTIONS

Taylor argues that his counsel performed ineffectively by not challenging his prior no-

contact order convictions. RCW 26.50.110(5)[3] elevates violation of a no-contact order to a felony

if

> the offender has at least two previous convictions for violating the provisions of an
> order issued under this chapter, chapter 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99,
> 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined
> in RCW 26.52.020. The previous convictions may involve the same victim or other
> victims specifically protected by the orders the offender violated.

However, in a pretrial hearing on the State's motions in limine, his counsel did argue that

these two convictions should not be considered prior convictions because the statements on plea

of guilty did not contain the element of knowing. The trial court responded that it was bound to

respect the judgment of another court and allowed the evidence of the prior convictions. Defense

counsel also argued that for the two prior convictions, the underlying offenses were from jail cells

to Taylor's ex-wife and were done on the same day so they should count as one offense. The trial

---

[3] The legislature amended RCW 26.50.110(5) in 2017. LAWS OF 2017, ch. 230, § 9. We cite to
the current version of the statute because for our purposes it has remained substantively the same.

court relied on the fact that the prior convictions had separate cause numbers, and it found that both were valid sentences that included a no-contact order.

Again, before jury instructions, Taylor's counsel emphasized that it was on the record that she objected to the prior convictions. She also told the trial court that "Mr. Taylor from the start did not believe this is a felony charge, and he just wants that on the record that he does not believe it's a felony charge." VRP (June 6, 2017) at 115.

Therefore, since defense counsel did challenge the prior convictions, Taylor's argument on this ground fails. In sum, Taylor's ineffective assistance claims fail.

## B. ARGUMENTS RAISED FOR THE FIRST TIME ON APPEAL

Taylor did not object at trial to the issues that the jury was improperly given his criminal history, that the jury instruction was misleading, and that the jury was given false evidence.

### 1. PRINCIPLES OF LAW

Generally, appellate courts will not consider errors raised for the first time on appeal absent a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The appellant must demonstrate the error is manifest and "truly of constitutional dimension." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). In order for an error to be manifest, there must be a showing of actual prejudice. *O'Hara*, 167 Wn.2d at 99.

#### a. CRIMINAL HISTORY

Taylor argues for the first time on appeal that the jury was improperly given his criminal history. First, he argues that prior to jury selection, the trial court already ruled that they were valid convictions, therefore it was unnecessary for the jury to have knowledge of the prior

convictions. Second, he argues that the prior convictions were prejudicial. These arguments are unpersuasive.

The threshold determination as to whether the prior convictions qualify under RCW 26.50.110(5) is "a question of law to be decided by a judge, not a jury." *State v. Case*, 187 Wn.2d 85, 92, 384 P.3d 1140 (2016). However, each element of a crime must be proved beyond a reasonable doubt. *In re Matter of Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

A violation of a domestic violence no-contact order is elevated from a gross misdemeanor to a felony when a jury finds that the defendant has two prior convictions for a violation of a no-contact order. RCW 26.50.110(5). Our Supreme Court has rejected the argument that a defendant has a right to a bifurcated trial where the judge would decide the prior conviction element and the jury would consider the other elements. *State v. Roswell*, 165 Wn.2d 186, 189, 198, 196 P.3d 705 (2008). Additionally, "[a]ny prejudice created by evidence of [] prior conviction[s] may be countered with a limiting instruction from the trial court." *Roswell*, 165 Wn.2d at 198.

The judge, not the jury, must make a threshold determination that these convictions qualify under RCW 26.50.110(5). *Case*, 187 Wn.2d at 92. However, whether or not he had been twice previously convicted for violating a no-contact order is still an element of the crime that the jury must find. RCW 26.50.110(5); *see Case*, 187 Wn.2d at 91. Therefore, Taylor's first argument fails, and he has not shown that this is a "manifest error." RAP 2.5(a)(3).

Second, Taylor argues that evidence of his prior convictions altered the jury's view of him and their findings. The trial court considered the potential prejudice before allowing the evidence of the prior convictions and said, "[A]s far as prior prejudice to the defendant, I don't think that

18

it's so prejudic[ial] that it outweighs the probative value of the evidence."  VRP (June 5, 2017) at

17.  Additionally, the trial court gave the jury a limiting instruction that stated,

> Certain evidence has been admitted in this case for only a limited purpose. Exhibits 7 and 11A consist of certified copies of judgments and sentences for two prior convictions for violating no-contact orders.  You may only consider Exhibits 7 and 11A for the purpose of evaluating whether or not the defendant has twice been previously convicted for violating the provisions of a court order.  You may not consider these exhibits for any other purpose.

CP at 42.  Here, the trial court mitigated any prejudicial effect through the limiting instruction, which instructed the jury to consider the prior convictions for the purpose of determining whether only one of the elements of the crime was met.  Therefore, Taylor has not demonstrated that the jury was improperly given his prior criminal history.  Thus, Taylor fails to show error, much less constitutional error.

> b.      JURY INSTRUCTIONS

First, Taylor argues that jury instruction number 16 was misleading because the trial court's instruction told the jury that they must all agree, therefore precluding a hung jury.  Taylor did not object to this instruction on appeal, and thus we reject this argument.

We review errors of law in jury instructions de novo.  *State v. Fleming*, 155 Wn. App. 489, 503, 228 P.3d 804 (2010).  Jury instructions are sufficient if when read as a whole they are not misleading and "properly inform the jury of the applicable law."  *Fleming*, 155 Wn. App. at 504..

Jury instruction number 16 provided that "[b]ecause this is a criminal case, each of you must agree for you to return a verdict.  When all of you have so agreed, fill in the verdict forms to express your decision."  CP at 49.  This instruction was not misleading.  This is the basic concluding instruction in *11A Washington Practice:  Washington Pattern Jury Instructions*: *Criminal* 151.00, at 684 (4th ed. 2016).  The instruction properly advised the jury that a verdict

required unanimity. *See State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). Additionally, the jury was polled which is evidence that the verdict was unanimous and that the decision was made through each juror's individual decision. *See State v. Lamar*, 180 Wn.2d 576, 587, 327 P.3d 46 (2014) ("Polling a jury, when properly carried out, is generally evidence of jury unanimity."). Therefore, there was no error, much less manifest error.

Second, Taylor argues that when the jury twice submitted questions asking if they had to be unanimous in their decision, it was misleading for the trial court to respond by saying refer to your instructions. Taylor specifically argues that if the trial court would have instructed the jury that they did not have to agree, there would have been a hung jury. However, the instructions accurately stated the law that the jury must be unanimous to reach a verdict. *See Petrich*, 101 Wn.2d at 569.

Additionally, the invited error doctrine precludes a defendant from seeking review of an error he created. *State v. Carson*, 179 Wn. App. 961, 973, 320 P.3d 185 (2014), *aff'd*, 184 Wn.2d 207, 357 P.3d 1064 (2015); *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999). Here, Taylor's counsel twice proposed that the trial court should respond to the jury's questions by answering, refer to your jury instructions. Therefore, Taylor cannot claim error on appeal.

c.    FALSE EVIDENCE TO JURY

Taylor argues for the first time that the State's trial brief incorrectly said that he had two prior convictions from Lakewood when these prior convictions were from Clark County and that this document was presented to the jury on a big screen projector during trial.  He said that he believed this made the jury biased.

During the pretrial hearing on the motions in limine, the State said that it was seeking to admit the prior convictions and acknowledged that it "miss-captioned [sic] it as Lakewood Municipal Court on my trial brief, but they're actually out of Vancouver, Clark County District Court."  VRP (June 5, 2017) at 14.  Taylor attached a page from the State's motions in limine with this information.  Nothing in our record shows that this trial brief was shown on a projector to the jury.  Therefore, Taylor's argument fails because on the record here, there is no evidence of error.

### C.  PRIOR CONVICTIONS

Taylor argues that he was convicted only once of two counts of breaking a no-contact order, and therefore he does not believe his crime constitutes a felony.  His defense counsel objected to the use of the two convictions.  Taylor's argument is unpersuasive.

The question of whether prior convictions meet the statutory requirements is a "threshold legal determination to be made by the trial judge." *Case*, 187 Wn.2d at 92.  "If the prior convictions do not qualify, they are almost certainly inadmissible on this point under ER 404(b)." *Case*, 187 Wn.2d at 92.  The validity of a prior conviction is a question of law that we review de novo. *Case*, 187 Wn.2d at 90.

At a pretrial hearing, Taylor's counsel argued that the two no-contact order offenses were both from jail calls to Taylor's ex-wife on the same day and they should count as one conviction. The record reveals that the trial court considered this argument, but found that they were two separate convictions. The trial court first reviewed exhibit 7 which is the judgment and sentence with cause number 121503, and the trial court noted that it was within the standard range, the box for no-contact was marked, it was signed by a judge, and it was a certified copy. The trial court then reviewed exhibit 11, also a judgment and sentence with the different cause number 121504, and described that was within the standard range, the requirement for no-contact was marked, and it was also signed by a judge, and it was a certified copy. Therefore, the trial court found that both were legally sufficient convictions to support the charge. The record shows there were two separate cause numbers and this supports the trial court's determination that these were two valid prior convictions.

CONCLUSION

We hold that there was sufficient evidence presented at trial to establish that Taylor had knowledge of the no-contact order. There was also sufficient evidence to support the materiality element of Taylor's conviction for making a false or misleading statement to a public servant. We also hold that Taylor's ineffective assistance of counsel claims fail. Taylor's arguments that the trial court erred by giving the jury his criminal history, that the jury instructions were misleading, and that the State presented to the jury false evidence fail because he has not shown error, much

No. 50448-1-II

less manifest error. Finally, we also hold that Taylor's two prior convictions were valid and separate convictions. Accordingly we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

BJORGEN, J.

SUTTON, J.